[No. S138130. Jan. 24, 2008.]

GARY ROSS, Plaintiff and Appellant, v.
RAGINGWIRE TELECOMMUNICATIONS, INC., Defendant and
Respondent.

COUNSEL

Joseph D. Elford; Law Office of Stewart Katz, Stewart Katz and Costa Kerestenzis for Plaintiff and Appellant.

Robert A. Raich for California Legislators as Amicus Curiae on behalf of Plaintiff and Appellant.

Daniel Abrahamson, Tamar Todd and Theshia Naidoo for American Pain Foundation, American Medical Women's Association, Lymphoma Foundation of America, American Nurses Association, California Nurses' Association, AIDS Action Council, National Women's Health Network, Doctors of the World-USA and Gay Men's Health Crisis as Amici Curiae on behalf of Plaintiff and Appellant.

Theodore Cody and David Goldberg for Protection and Advocacy, Inc., and Equal Rights Advocates as Amici Curiae on behalf of Plaintiff and Appellant.

Jackson Lewis, D. Gregory Valenza, Marlena G. Gibbons, Patrick C. Mullin, Timothy C. Travelstead and Robert M. Pattison for Defendant and Respondent.

Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.

Suzanne B. Gifford and Richard A. Katzman for Santa Clara Valley Transportation Authority as Amicus Curiae on behalf of Defendant and Respondent.

Cook Brown, Dennis B. Cook and Ronald E. Hofsdal for Western Electrical Contractors Association as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**WERDEGAR, J.**—The Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5, added by initiative, Prop. 215, as approved by voters, Gen. Elec. (Nov. 5, 1996)) gives a person who uses marijuana for medical purposes on a physician's recommendation a defense to certain state criminal charges involving the drug, including possession (Health & Saf. Code, § 11357; see *id.*, § 11362.5, subd. (d)). Federal law, however, continues to prohibit the drug's possession, even by medical users. (21 U.S.C. §§ 812, 844(a)); see *Gonzales v. Raich* (2005) 545 U.S. 1, 26–29 [162 L.Ed.2d 1,

125 S.Ct. 2195]; *United States v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483, 491–495 [149 L.Ed.2d 722, 121 S.Ct. 1711].)

■ Plaintiff, whose physician recommended he use marijuana to treat chronic pain, was fired when a preemployment drug test required of new employees revealed his marijuana use. The lower courts held plaintiff could not on that basis state a cause of action against his employer for disability-based discrimination under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; see *id.*, § 12940, subd. (a); hereafter the FEHA) or for wrongful termination in violation of public policy (see, e.g., *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 887 [66 Cal.Rptr.2d 888, 941 P.2d 1157]; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170, 176–178 [164 Cal.Rptr. 839, 610 P.2d 1330]). We conclude the lower courts were correct: Nothing in the text or history of the Compassionate Use Act suggests the voters intended the measure to address the respective rights and duties of employers and employees. Under California law, an employer may require preemployment drug tests and take illegal drug use into consideration in making employment decisions. (*Loder v. City of Glendale* (1997) 14 Cal.4th 846, 882–883 [59 Cal.Rptr.2d 696, 927 P.2d 1200].) We thus affirm.

## I. FACTS

This case comes to us on review of a judgment entered after the superior court sustained a demurrer to plaintiff's complaint without leave to amend. In this procedural posture, the only question before us is whether plaintiff can state a cause of action. In reviewing the complaint to answer that question, we treat the demurrer as admitting the complaint's well-pleaded allegations of material fact, but not its contentions, deductions or conclusions of law. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394]; *Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].) The complaint's allegations may be summarized for this purpose as follows:

Plaintiff Gary Ross suffers from strain and muscle spasms in his back as a result of injuries he sustained while serving in the United States Air Force. Because of his condition, plaintiff is a qualified individual with a disability under the FEHA and receives governmental disability benefits. In September 1999, after failing to obtain relief from pain through other medications, plaintiff began to use marijuana on his physician's recommendation pursuant to the Compassionate Use Act.

On September 10, 2001, defendant RagingWire Telecommunications, Inc., offered plaintiff a job as lead systems administrator. Defendant required plaintiff to take a drug test. Before taking the test, plaintiff gave the clinic that

would administer the test a copy of his physician's recommendation for marijuana. Plaintiff took the test on September 14 and began work on September 17. Later that week, the clinic informed plaintiff by telephone that he had tested positive for tetrahydrocannabinol (THC), a chemical found in marijuana. On September 20, defendant informed plaintiff he was being suspended as a result of the drug test. Plaintiff gave defendant a copy of his physician's recommendation for marijuana and explained ,to defendant's human resources director that he used marijuana for medical purposes to relieve his chronic back pain. Defendant's representative told plaintiff that defendant would call his physician, verify the recommendation, and advise him of defendant's decision regarding his employment. On September 21, defendant's board of directors met to discuss the matter and, on September 25, defendant's chief executive officer informed plaintiff that he was being fired because of his marijuana use.

Plaintiff's disability and use of marijuana to treat pain, he alleges, do not affect his ability to do the essential functions of the job for which defendant hired him. Plaintiff has worked in the same field since he began to use marijuana and has performed satisfactorily, without complaints about his job performance.

Based on these allegations, plaintiff alleges defendant violated the FEHA by discharging him because of, and by failing to make reasonable accommodation for, his disability. (Gov. Code, § 12940, subd. (a).) Plaintiff also alleges defendant terminated his employment wrongfully, in violation of public policy. (See *Stevenson v. Superior Court, supra,* 16 Cal.4th 880, 887; *Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167, 170, 176–178.) The superior court sustained defendant's demurrer without leave to amend and entered judgment for defendant. The Court of Appeal affirmed. We granted plaintiff's petition for review.

## II.  DISCUSSION

### A.  *The FEHA*

The FEHA declares and implements the state's public policy against discrimination in employment. (Gov. Code, §§ 12920–12921.) The particular section of the FEHA under which plaintiff attempts to state a claim, Government Code section 12940, provides that "[i]t shall be an unlawful employment practice . . . [¶] (a) For an employer, because of the . . . physical disability [or] medical condition . . . of any person, to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . ." An employer may discharge or refuse to hire a person who, because of a disability or medical condition, "is unable to perform his or her

essential duties even with reasonable accommodations." (*Id.*, § 12940, subd. (a)(1), (2).) The FEHA thus inferentially requires employers in their hiring decisions to take into account the feasibility of making reasonable accommodations.

Plaintiff, seeking to bring himself within the FEHA, alleges he has a physical disability in that he "suffers from a lower back strain and muscle spasms in his back . . . ." He uses marijuana to treat the resulting pain. Marijuana use, however, brings plaintiff into conflict with defendant's employment policies, which apparently deny employment to persons who test positive for illegal drugs. By denying him employment and failing to make reasonable accommodation, plaintiff alleges, defendant has violated the FEHA. Plaintiff does not in his complaint identify the precise accommodation defendant would need to make in order to enable him to perform the essential duties of his job. One may fairly infer from plaintiff's allegations, however, that he is asking defendant to accommodate his use of marijuana at home by waiving its policy requiring a negative drug test of new employees.[1] "Just as it would violate the FEHA to fire an employee who uses insulin or Zoloft," plaintiff argues, "it violates [the] statute to terminate an employee who uses a medicine deemed legal by the California electorate upon the recommendation of his physician." In this way, plaintiff reasons, "the [FEHA] works together with the Compassionate Use Act . . . to provide a remedy to [him]."

■ Plaintiff's position might have merit if the Compassionate Use Act gave marijuana the same status as any legal prescription drug. But the act's effect is not so broad. No state law could completely legalize marijuana for medical purposes because the drug remains illegal under federal law (21 U.S.C. §§ 812, 844(a)), even for medical users (see *Gonzales v. Raich*, *supra*, 545 U.S. 1, 26–29; *United States v. Oakland Cannabis Buyers' Cooperative*, *supra*, 532 U.S. 483, 491–495). Instead of attempting the impossible, as we shall explain, California's voters merely exempted medical users and their primary caregivers from criminal liability under two specifically designated state statutes. Nothing in the text or history of the Compassionate Use Act suggests the voters intended the measure to address the respective rights and obligations of employers and employees.

■ The FEHA does not require employers to accommodate the use of illegal drugs. The point is perhaps too obvious to have generated appellate litigation, but we recognized it implicitly in *Loder v. City of Glendale*, *supra*, 14 Cal.4th 846 (*Loder*). Among the questions before us in *Loder* was whether an employer could require prospective employees to undergo testing for illegal drugs and alcohol, and whether the employer could have access to the

---

[1] Plaintiff expressly disclaims any intention to use or possess marijuana at work.

test results, without violating California's Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.). We determined that an employer could lawfully do both.[2] In reaching this conclusion, we relied on a regulation adopted under the authority of the FEHA (Cal. Code Regs., tit. 2, § 7294.0, subd. (d); see Gov. Code, § 12935, subd. (a)) that permits an employer to condition an offer of employment on the results of a medical examination. (*Loder*, at p. 865; see also *id.* at pp. 861–862.) We held that such an examination may include drug testing and, in so holding, necessarily recognized that employers may deny employment to persons who test positive for illegal drugs. The employer, we explained, was "seeking information that [was] relevant to its hiring decision and that it legitimately may ascertain." (*Id.* at p. 883, fn. 15.) We determined the employer's interest was legitimate "[i]n light of the well-documented problems that are associated with the abuse of drugs and alcohol by employees—increased absenteeism, diminished productivity, greater health costs, increased safety problems and potential liability to third parties, and more frequent turnover . . . ." (*Id.* at p. 882, fn. omitted.) We also noted that the plaintiff in that case had "cite[d] no authority indicating that an employer may not reject a job applicant if it lawfully discovers that the applicant currently is using illegal drugs or engaging in excessive consumption of alcohol." (*Id.* at p. 883, fn. 15.) The employer's legitimate concern about the use of illegal drugs also led us in *Loder* to reject the claim that preemployment drug testing violated job applicants' state constitutional right to privacy. (*Id.* at pp. 887–898; see Cal. Const., art. I, § 1.) In so holding we relied in part on *Wilkinson v. Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1046–1053 [264 Cal.Rptr. 194], in which the Court of Appeal had earlier reached the same conclusion. (*Loder, supra,* at pp. 888–889.)

The Compassionate Use Act (Health & Saf. Code, § 11362.5) does not eliminate marijuana's potential for abuse or the employer's legitimate interest in whether an employee uses the drug. Marijuana, as noted, remains illegal under federal law because of its "high potential for abuse," its lack of any "currently accepted medical use in treatment in the United States," and its "lack of accepted safety for use . . . under medical supervision." (21 U.S.C. § 812(b)(1); see *Gonzales v. Raich, supra,* 545 U.S. 1, 14.) Although California's voters had no power to change federal law, certainly they were free to disagree with Congress's assessment of marijuana, and they also were free to view the possibility of beneficial medical use as a sufficient basis for exempting from criminal liability under state law patients whose physicians recommend the drug. The logic of this position, however, did not compel the voters to take the additional step of requiring employers to accommodate

---

[2] While the decision in *Loder, supra,* 14 Cal.4th 846, took the form of a lead opinion signed by two justices, five justices concurred in the lead opinion's conclusions concerning preemployment drug testing. (See *id.* at p. 853, fn. 1.)

marijuana use by their employees. The voters were entitled to change the criminal law without also speaking to employment law.

The operative provisions of the Compassionate Use Act (Health & Saf. Code, § 11362.5) do not speak to employment law. Except in their treatment of physicians, who are protected not only from "punish[ment]" but also from being "denied any right or privilege . . . for having recommended marijuana" (*id.*, subd. (c)), the act's operative provisions speak exclusively to the criminal law. Subdivision (d) of section 11362.5 provides that "[s]ection 11357, relating to the possession of marijuana, and [s]ection 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." Subdivision (e) of section 11362.5 simply defines "primary caregiver." The operative provisions do not mention employment law.

Neither is employment law mentioned in the findings and declarations (Health & Saf. Code, § 11362.5, subd. (b)(1)(A)–(C), (2)) that precede the Compassionate Use Act's operative provisions. In those introductory provisions, the voters declared their intent "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes" under the conditions stated in the act (*id.*, subd. (b)(1)(A)), to ensure that medical users of marijuana and their primary caregivers "are not subject to criminal prosecution or sanction" (*id.*, subd. (b)(1)(B)), and "[t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana" (*id.*, subd. (b)(1)(C)). In a final introductory provision, the voters declared that "[n]othing in this section [i.e., the Compassionate Use Act] shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes." (*Id.*, subd. (b)(2).)

Plaintiff would read the first of these findings and declarations (Health & Saf. Code, § 11362.5, subd. (b)(1)(A)) as if it created a broad right to use marijuana without hindrance or inconvenience, enforceable against private parties such as employers. The provision states in full: "The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows: [¶] (A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief." Not to require employers to accommodate marijuana use, plaintiff contends, "would eviscerate the right

promised to the seriously ill by the California electorate." To the contrary, the only "right" to obtain and use marijuana created by the Compassionate Use Act is the right of "a patient, or . . . a patient's primary caregiver, [to] possess[] or cultivate[] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician" without thereby becoming subject to punishment under sections 11357 and 11358 of the Health and Safety Code. (*Id.*, § 11362.5, subd. (d).) An employer's refusal to accommodate an employee's use of marijuana does not affect, let alone eviscerate, the immunity to criminal liability provided in the act. We thus give full effect to the limited "right to obtain and use marijuana" (*id.*, subd. (b)(1)(A)) granted in the act (*id.*, subd. (d)) by enforcing it according to its terms.

The proponents of the Compassionate Use Act (Health & Saf. Code, § 11362.5) consistently described the proposed measure to the voters as motivated by the desire to create a narrow exception to the criminal law.[3] The proponents spoke, for example, of their desire to "protect patients from criminal penalties for marijuana" (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument in favor of Prop. 215, p. 60) and not to "send cancer patients to jail for using marijuana" (*id.*, rebuttal to argument against Prop. 215, p. 61). Although the measure's *opponents* argued the act would "make it legal for people to smoke marijuana in the workplace . . . .or in public places . . . next to your children" (*id.*, rebuttal to argument in favor of Prop. 215, p. 60), the argument was obviously disingenuous because the measure did not purport to change the laws affecting public intoxication with controlled substances (Pen. Code, § 647, subd. (f)) or the laws addressing controlled substances in such places as schools and parks (Health & Saf. Code, §§ 11353.5, 11353.7), and the act expressly provided that it did not "supersede legislation prohibiting persons from engaging in conduct that endangers others" (*id.*, § 11362.5, subd. (b)(2)). Proponents reasonably countered the argument by observing that, under the measure, "[p]olice officers can still arrest anyone for marijuana offenses. Proposition 215 simply gives those arrested a defense in court, *if they can prove they used marijuana with a doctor's approval.*" (Ballot Pamp., *supra*, rebuttal to argument against Prop. 215, p. 61.)[4]

---

[3] The voters did not give medical users of marijuana complete immunity from state criminal law. For example, the act left medical users subject to laws prohibiting marijuana's transportation (Health & Saf. Code, § 11360), sale (*ibid.*) and possession for sale (*id.*, § 11359). Legislation enacted after this case arose created additional narrow medical exceptions to those statutes. (*Id.*, § 11362.765, added by Stats. 2003, ch. 875, § 2.) Even while broadening immunity in some respects, however, the Legislature prohibited possession by medical users of large quantities of marijuana. (Health & Saf. Code, § 11362.77, subd. (a).)

[4] The Legislature subsequently provided medical users of marijuana and their primary caregivers limited immunity from arrest for possessing, transporting, delivering and cultivating the drug. (Health & Saf. Code, § 11362.71, subd. (e), added by Stats. 2003, ch. 875, § 2.)

In conclusion, given the Compassionate Use Act's modest objectives and the manner in which it was presented to the voters for adoption, we have no reason to conclude the voters intended to speak so broadly, and in a context so far removed from the criminal law, as to require employers to accommodate marijuana use. As another court has observed, "the proponents' ballot arguments reveal a delicate tightrope walk designed to induce voter approval, which we would upset were we to stretch the proposition's limited immunity to cover that which its language does not." (*People v. Galambos* (2002) 104 Cal.App.4th 1147, 1152 [128 Cal.Rptr.2d 844].)

■ Arguing against this conclusion, plaintiff notes that " ' "[the] power of the initiative must be liberally construed . . . to promote the democratic process." ' " (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 219 [149 Cal.Rptr. 239, 583 P.2d 1281], quoting *San Diego Bldg. Contractors Assn. v. City Council* (1974) 13 Cal.3d 205, 210, fn. 3 [118 Cal.Rptr. 146, 529 P.2d 570].) There is no question, however, that the voters had the power to change state law concerning marijuana in any respect they wished. Thus, the question before us is not whether the voters had the power to change employment law, but whether they actually intended to do so. As we have explained, there is no reason to believe they did. For a court to construe an initiative statute to have substantial unintended consequences strengthens neither the initiative power nor the democratic process; the initiative power is strongest when courts give effect to the voters' formally expressed intent, without speculating about how they might have felt concerning subjects on which they were not asked to vote. As plaintiff notes, "[t]he judiciary's traditional role of interpreting ambiguous statutory language or 'filling in the gaps' of statutory schemes is, of course, as applicable to initiative measures as it is to measures adopted by the Legislature." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1202 [246 Cal.Rptr. 629, 753 P.2d 585].) We detect, however, no relevant ambiguity in the Compassionate Use Act, which simply does not speak to employment law. In any event, our power to resolve ambiguities in statutory language is only a tool for achieving the ultimate goal of statutory interpretation, which is to effectuate the enactors' intent.

Finally, plaintiff contends that legislation enacted after the Compassionate Use Act (Health & Saf. Code, § 11362.5) requires employers to accommodate employees' use of medical marijuana at home. Plaintiff attempts to find such a rule in Health and Safety Code section 11362.785, subdivision (a) (added by Stats. 2003, ch. 875, § 2), which took effect more than two years after defendant terminated plaintiff's employment. The statute provides as follows: "Nothing in this article shall require any accommodation of any medical use of marijuana on the property or premises of any place of employment or during the hours of employment or on the property or premises of any jail, correctional facility, or other type of penal institution in which prisoners

reside or persons under arrest are detained." (Health & Saf. Code, § 11362.785, subd. (a).) Plaintiff would read this language as if it articulated express exceptions to a general requirement of accommodation that appears only implicitly. Plaintiff's interpretation might be plausible if the failure to infer a requirement of accommodation would render the statute meaningless, but such is not the case. Even without inferring a requirement of accommodation, the statute can be given literal effect as negating any expectation that the immunity to criminal liability for possessing marijuana granted in the Compassionate Use Act gives medical users a civilly enforceable right to possess the drug at work or in custody.

In any event, given the controversy that would inevitably have attended a legislative proposal to require employers to accommodate marijuana use, we do not believe that Health and Safety Code section 11362.785, subdivision (a), can reasonably be understood as adopting such a requirement silently and without debate.

Arguing to the contrary as amici curiae, five present and former state legislators who authored the bill adding section 11362.785 to the Health and Safety Code state they "believed that this statutory enactment clearly and sufficiently expressed [their] belief that the FEHA *does* require employers generally to accommodate off-duty, off-premises medical cannabis use by their employees, absent an undue hardship." Amici curiae do not assert, however, that they shared their view of the proposed legislation with the Legislature as a whole. We therefore have no basis for imputing the authors' views to the whole Legislature. " 'In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy [citation]; no guarantee can issue that those who supported his proposal shared his view of its compass.' " (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699–700 [170 Cal.Rptr. 817, 621 P.2d 856], quoting *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589–590 [128 Cal.Rptr. 427, 546 P.2d 1371].)

We thus conclude that plaintiff cannot state a cause of action under the FEHA based on defendant's refusal to accommodate his use of marijuana.

## B. *Wrongful Termination in Violation of Public Policy*

Plaintiff also attempts, based on defendant's refusal to accommodate his use of marijuana, to state a cause of action for wrongful termination in violation of public policy. The legal principles that underlie such a claim are well established: Either party to a contract of employment without a specified

term may terminate the contract at will (Lab. Code, § 2922), but this ordinary rule is subject to the exception that an employer may not discharge an employee for a reason that violates a fundamental public policy of the state. (*Stevenson v. Superior Court, supra,* 16 Cal.4th 880, 887; *Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167, 170, 176–178.) To support such a cause of action, the policy in question must satisfy four requirements: "First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be 'fundamental' and 'substantial.' " (*Stevenson v. Superior Court, supra,* 16 Cal.4th 880, 889–890, fn. omitted.)

Defendant contends his discharge violated fundamental public policies supported by the Compassionate Use Act (Health & Saf. Code, § 11362.5), the FEHA (Gov. Code, § 12900 et seq.), and the privacy clause of the California Constitution (Cal. Const., art. I, § 1). We disagree.

 The Compassionate Use Act (Health & Saf. Code, § 11362.5), as we have explained, simply does not speak to employment law. Nothing in the act's text or history indicates the voters intended to articulate any policy concerning marijuana in the employment context, let alone a fundamental public policy requiring employers to accommodate marijuana use by employees. Because the act articulates no such policy, to read the FEHA in light of the Compassionate Use Act leads to no different result. Plaintiff argues that the statutory provision on which a wrongful termination claim is based "does not have to . . . prohibit the employer's precise act . . . ." (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 80–81 [14 Cal.Rptr.3d 893].) Even so, the provision in question still " 'must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law' " (*id.* at p. 81, quoting *Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, 1480 [16 Cal.Rptr.2d 888]; see *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256, fn. 9 [32 Cal.Rptr.2d 223, 876 P.2d 1022]) and to " 'have adequate notice of the conduct that will subject [the employer] to tort liability to the employees [it] discharge[s]' " (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 79 [78 Cal.Rptr.2d 16, 960 P.2d 1046], quoting *Stevenson v. Superior Court, supra,* 16 Cal.4th 880, 889). The Compassionate Use Act did not put defendant on notice that employers would thereafter be required under the FEHA to accommodate the use of marijuana.

Plaintiff also argues that his discharge violated the public policy that underlies an adult patient's right "to determine whether or not to submit to lawful medical treatment" (*Cobbs v. Grant* (1972) 8 Cal.3d 229, 242 [104

Cal.Rptr. 505, 502 P.2d 1])—a right we have located both in the privacy clause of the state Constitution (art. I, § 1) and in the common law. (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 531–532 [110 Cal.Rptr.2d 412, 28 P.3d 151].) The body of law to which plaintiff refers protects the right of competent adult patients to refuse medical treatment (*id.* at p. 531) and imposes, inferentially, an obligation on health care providers to seek patients' informed consent before undertaking medical procedures (*ibid.*). Defendant's decision not to accommodate plaintiff's marijuana use does not implicate plaintiff's right to refuse medical treatment.

In the course of this argument, plaintiff attempts to describe a right of medical self-determination broader than the right to refuse treatment we recognized in *Conservatorship of Wendland, supra,* 26 Cal.4th 519, 531–532, and in *Cobbs v. Grant, supra,* 8 Cal.3d 229, 242. Plaintiff relies on *Abigail Alliance v. Von Eschenbach* (D.C. Cir. 2006) 370 U.S. App.D.C. 391 [445 F.3d 470, 486], in which a federal court held that a terminally ill patient with no other government-approved treatment options had a due process right under the United States Constitution to have access to an investigational new drug that the Food and Drug Administration had not approved for commercial sale but had determined to be sufficiently safe for testing on human beings. Analogizing to *Abigail Alliance,* plaintiff argues that "[i]n California, medical marijuana use is legal, so under the state [C]onstitution RagingWire was not permitted to prohibit [plaintiff] from using it." Assuming for the sake of argument *Abigail Alliance* has any relevance to the case before us, the decision does not compel a different result because defendant has not prevented plaintiff from having access to marijuana. Defendant has only refused to employ plaintiff. To assert that defendant's refusal to employ plaintiff affects his access to marijuana is merely to restate the argument that the Compassionate Use Act (Health & Saf. Code, § 11362.5) gives plaintiff a right to use marijuana free of hindrance or inconvenience, enforceable against third parties. That argument we have already rejected. (See, *ante,* at pp. 928–929.)

We thus conclude plaintiff cannot state a cause of action for wrongful termination in violation of public policy.

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Chin, J., and Corrigan, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—Under this state's Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5; hereafter the Compassionate Use Act), doctor-recommended marijuana use as a medical treatment

is "not subject to criminal prosecution or sanction." (Health & Saf. Code, § 11362.5, subd. (b)(1)(B).) In a decision conspicuously lacking in compassion, however, the majority holds that an employer may fire an employee for such marijuana use, even when it occurs during off-duty hours, does not affect the employee's job performance, does not impair the employer's legitimate business interests, and provides the only effective relief for the employee's chronic pain and muscle spasms. I disagree.

The majority's holding disrespects the will of California's voters who, when they enacted the Compassionate Use Act, surely never intended that persons who availed themselves of its provisions would thereby disqualify themselves from employment. Moreover, as I will explain, unless an employer can demonstrate that an employee's doctor-approved use of marijuana under the Compassionate Use Act while off duty and away from the jobsite is likely to impair the employer's business operations in some way, or that the employer has offered another reasonable and effective form of accommodation, the employer's discharge of the employee is disability discrimination prohibited by the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; hereafter the FEHA).

I agree with the majority, however, that because federal law prohibits marijuana possession (21 U.S.C. §§ 812, 844(a)), discharging an employee for off-duty, physician-recommended marijuana use will not support a claim of wrongful discharge in violation of public policy (see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]).

## I

As a result of injuries he sustained in January 1983 during his service with the United States Air Force, plaintiff Gary Ross suffers from a lower back strain and muscle spasms. In September 1999, after muscle relaxants and conventional medications had failed to provide relief from the pain and muscle spasms, and on his doctor's recommendation, plaintiff began using marijuana as a medication for his back problems.

In September 2001, plaintiff accepted a job with defendant RagingWire Telecommunications, Inc. (RagingWire), as a lead systems administrator. Since beginning treatment with marijuana, plaintiff had held similar employment, and his disability and marijuana use had not impaired his job performance. After hiring plaintiff, RagingWire required him to take a drug test. Plaintiff gave the clinic administering the test a copy of his doctor's written recommendation to use marijuana in accordance with the state Compassionate Use Act.

Not surprisingly, plaintiff's test results were positive for tetrahydrocannabinol, the active chemical in marijuana. Plaintiff presented his doctor's marijuana recommendation to RagingWire's human resources director, explaining that he used marijuana to treat his chronic back pain in accordance with the state Compassionate Use Act. Nevertheless, without offering any other form of accommodation for his back condition, RagingWire discharged plaintiff because of his at-home, doctor-recommended marijuana use.

Plaintiff sued RagingWire for disability discrimination in violation of the FEHA, breach of contract, and wrongful discharge in violation of public policy. The trial court sustained RagingWire's demurrer without leave to amend and dismissed plaintiff's complaint, and the Court of Appeal affirmed.

## II

In November 1996, the California electorate enacted Proposition 215, an initiative measure entitled "Medical Use of Marijuana." Proposition 215 added section 11362.5 to the Health and Safety Code. That section provides:

"(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.

"(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:

"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

"(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.

"(e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (Health & Saf. Code, § 11362.5.)

Although the Compassionate Use Act was the first law of its kind in the nation, at least nine states now have similar laws.[1] (See *Gonzales v. Raich* (2005) 545 U.S. 1, 5, fn. 1 [162 L.Ed.2d 1, 125 S.Ct. 2195].) In two other states, Florida and Idaho, appellate court decisions have recognized a medical necessity defense for persons charged with illegal marijuana possession or cultivation. (*Sowell v. State* (Fla.Dist.Ct.App. 1998) 738 So.2d 333, 334; *State v. Hastings* (1990) 118 Idaho 854 [801 P.2d 563, 565].)

Courts must construe statutes to effectuate the purpose of the law. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234, 112 P.3d 623].) As explained by the statute's words quoted above, the purpose of the Compassionate Use Act is to allow California residents to use marijuana, when a doctor recommends it, to treat medical conditions, including chronic pain, without being subject "to criminal prosecution *or sanction*." (Health & Saf. Code, § 11362.5, subd. (b)(1)(B), italics added.) The majority's construction defeats, rather than effectuates, that purpose. The majority renders illusory the law's promise that responsible use of marijuana as a medical treatment will be free of sanction. The majority allows employers to impose the sanction of job termination on those employees who use marijuana under the statute's provisions. The majority's decision leaves many Californians with serious illnesses just two options: continue receiving the benefits of marijuana use "in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or . . . other illness" (Health &

[1] State and federal laws permitting marijuana use for medical purposes have existed at various times and in various forms, however, for many decades. (See *Leary v. United States* (1969) 395 U.S. 6, 16–18 & fn. 19 [23 L.Ed.2d 57, 89 S.Ct. 1532]; Note, *Last Resorts and Fundamental Rights: The Substantive Due Process Implications of Prohibitions on Medical Marijuana* (2005) 118 Harv. L.Rev. 1985, 1997–1998.)

Saf. Code, § 11362.5, subd. (b)(1)(A)) and become unemployed, giving up what may be their only source of income, or continue in their employment, discontinue marijuana treatment, and try to endure their chronic pain or other condition for which marijuana may provide the only relief. Surely this cruel choice is not what California voters intended when they enacted the state' Compassionate Use Act.

Nor is this cruel choice something that the FEHA permits. One of the FEHA's stated purposes is "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of . . . physical disability . . . [or] medical condition . . . ." (Gov. Code, § 12920.) The FEHA recognizes that "the practice of denying employment opportunity . . . [on account of physical disability or medical condition] deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general." (Gov. Code, § 12920.) Under the FEHA, it is an unlawful employment practice "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" (*id.*, § 12940, subd. (m)) or "to fail to engage in a timely, good faith, interactive process with [an] employee or applicant to determine effective reasonable accommodations" (*id.*, § 12940, subd. (n)). The FEHA directs that its provisions are to be construed liberally to accomplish each of its purposes. (*Id.*, § 12993, subd. (a).)

The majority says that the FEHA requires the employer to make only "reasonable accommodation" for an employee's disability (Gov. Code, § 12940, subd. (m)), and that accepting an employee's physician-approved, off-duty marijuana use for medical treatment is not a "reasonable accommodation" because federal law prohibits marijuana possession (21 U.S.C. §§ 812, 844(a)). I disagree.

The FEHA sets forth an illustrative list of measures that may constitute reasonable accommodation, including (1) "[m]aking existing facilities used by employees readily accessible to, and useable by, individuals with disabilities," and (2) "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, *adjustment or modification of* examinations, training materials or *policies*, [and] the provision of qualified readers or interpreters . . . ." (Gov. Code, § 12926, subd. (n)(1), (2), italics added.) Thus, the accommodations that the FEHA requires may include adjustment or modification of an employer's policy, such as a policy concerning employee drug use.

Nothing in the text of the FEHA or in California decisional law supports the proposition that a requested accommodation can never be deemed reasonable if it involves off-duty conduct by the employee away from the jobsite that is criminal under federal law, even though that same conduct is expressly protected from criminal sanction under state law. Rather, under the FEHA, determining whether an employee-proposed accommodation is reasonable requires consideration of its benefits to the employee (including its effectiveness in meeting the employee's disability-related needs and enabling the employee to competently perform the essential job functions), the burdens it would impose on the employer and other employees, and the availability of suitable and effective alternative forms of accommodation. (See *US Airways, Inc. v. Barnett* (2002) 535 U.S. 391, 403–404 [152 L.Ed.2d 589, 122 S.Ct. 1516] [proposed accommodation not reasonable because it would conflict with seniority rights of other employees]; *Oconomowoc Residential Prog. v. City of Milwaukee* (7th Cir. 2002) 300 F.3d 775, 784 ["Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties."]; *Alley v. Charleston Area Med. Center, Inc.* (2004) 216 W.Va. 63 [602 S.E.2d 506, 516] [" 'reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he or she was hired . . .' "].)

The FEHA does not require an employer to make any accommodation that the employer can demonstrate would impose an "undue hardship" on the operation of its business. (Gov. Code, § 12940, subd. (m).) The FEHA defines an " '[u]ndue hardship' " as "an action requiring significant difficulty or expense, when considered in light of the following factors: [¶] (1) The nature and cost of the accommodation needed. [¶] (2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility. [¶] (3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities. [¶] (4) The type of operations, including the composition, structure, and functions of the workforce of the entity. [¶] (5) The geographic separateness, administrative, or fiscal relationship of the facility or facilities." (*id.*, § 12926, subd. (s).)

Here, plaintiff's complaint alleges in substance that marijuana use is essential to provide him relief from the chronic pain and muscle spasms of his disabling back condition, that more conventional medications have not provided similar relief, and that effective treatment is necessary for him to work productively. RagingWire has not argued that plaintiff's requested

accommodation would interfere with the rights or interests of its other employees. Accordingly, the reasonableness of the proposed accommodation of allowing plaintiff to use marijuana at home, as an exception to RagingWire's normal drug-screening policies, turns on *how it would affect RagingWire's legitimate interests as an employer* and, more specifically, whether it would impose an "undue hardship"—defined as "an action requiring significant difficulty or expense"—on the operation of the RagingWire's business. (Gov. Code, §§ 12940, subd. (m), 12926, subd. (s); see *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 356 [118 Cal.Rptr.2d 443].) To establish that plaintiff's proposed accommodation was unreasonable, therefore, RagingWire must show that, because marijuana possession is illegal under federal law, an employee's off-duty and offsite use of marijuana would adversely affect its business operations.

RagingWire cites the state Drug-Free Workplace Act of 1990 (Gov. Code, § 8350 et seq.) as demonstrating that employers are not required to tolerate marijuana use by their employees. Under that legislation, persons or organizations that provide property or services to any state agency are required to certify that they will "provide a drug-free workplace" (*id.*, § 8355), which is defined as "a site . . . at which employees of the entity are prohibited from engaging in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance" (*id.*, § 8351, subd. (a)). The term "controlled substance" is defined to include any substance, like marijuana, listed in schedule I of the federal Controlled Substances Act (21 U.S.C. § 812). (Gov. Code, § 8351, subd. (c).) Under federal law, federal grant recipients are subject to a similar drug-free workplace requirement. (41 U.S.C. § 702.)

RagingWire argues that, under these state and federal laws, tolerating plaintiff's doctor-approved marijuana use would jeopardize its ability to contract with state agencies or to obtain federal grants. Both the state and federal drug-free workplace laws are concerned only with conduct *at the jobsite*, however. RagingWire argues that an employee who ingested marijuana at home but remained under its influence at work might be viewed as "using" marijuana at work. But plaintiff has not sought an accommodation that would allow him to possess or be under the influence of marijuana at work. The drug-free workplace laws are not concerned with employees' possession or use of drugs like marijuana away from the jobsite, and nothing in those laws would prevent an employer that knowingly accepted an employee's use of marijuana as a medical treatment at the employee's home from obtaining drug-free workplace certification.

Because this case arises on demurrer, RagingWire has presented no evidence to substantiate its claim that accommodating plaintiff's doctor-recommended use of marijuana would necessarily or likely have substantial

adverse effects on its business operations. In the absence of such evidence, there is no basis for the majority to conclude that accommodating plaintiff's doctor-approved marijuana use would be unreasonable within the meaning of the FEHA. Therefore, plaintiff's complaint states a cause of action under California's FEHA.

The majority appears to rely in part on *Loder v. City of Glendale* (1997) 14 Cal.4th 846 [59 Cal.Rptr.2d 696, 927 P.2d 1200] (*Loder*). There, the City of Glendale had adopted a drug testing program under which all job applicants who had conditionally been offered employment and all existing employees who had been approved for promotion to new positions were required to undergo urinalysis testing for a variety of illegal drugs. (*Id.* at pp. 852–853 (lead opn. of George, C. J.).) If the test revealed "the presence of drugs *for which the applicant* [had] *no legitimate medical explanation*, the applicant [was] disqualified from hiring or promotion . . . ." (*Id.* at p. 856, italics added.) A taxpayer sued to enjoin further expenditure of public funds for the drug testing program, arguing that the program violated, among other things, the state Constitution's guarantee of the right of privacy. (14 Cal.4th at p. 856.) The trial court concluded that, as to both job applicants and current employees seeking promotion, the program was valid for some job classifications but not others, and it issued an injunction prohibiting use of the drug testing program for the job categories as to which it had found the program impermissible. (*Id.* at pp. 857–858.)

In *Loder*, a majority of this court acknowledged that an employer has a legitimate interest in determining whether job applicants and employees are *abusing* drugs, because drug *abuse* is commonly associated with increased absenteeism, diminished productivity, greater health costs, increased safety problems, potential liability to third parties, and more frequent turnover. (*Loder, supra,* 14 Cal.4th at pp. 882–883, 897 (lead opn. of George, C. J.); *id.* at pp. 927–928 (conc. & dis. opn. of Chin, J.).) "[A]n employer generally need not resort to suspicionless drug testing to determine whether a *current employee* is likely to be absent from work or less productive or effective as a result of current drug or alcohol abuse: an employer can observe the employee at work, evaluate his or her work product and safety record, and check employment records to determine whether the employee has been excessively absent or late." (*Id.* at p. 883 (lead opn. of George, C. J.), italics added; see *id.* at p. 919 (conc. & dis. opn. of Kennard, J.).) For a *job applicant*, however, "an employer has not had a similar opportunity to observe the applicant over a period of time" and "reasonably may lack total confidence in the reliability of information supplied by a former employer or other references." (*Id.* at p. 883 (lead opn. of George, C. J.).) Although the employer could observe the employee after hiring, "the hiring of a new employee frequently represents a considerable investment on the part of an employer . . ." and "once an applicant is hired, any attempt by the

employer to dismiss the employee generally will entail additional expenses . . . ." (*Ibid.* (lead opn. of George, C. J.); see *id.* at pp. 927–928 (conc. & dis. opn. of Chin, J.).) Thus, "[t]he employer's interest is a significant one, not only because the mistaken hiring of an individual who is abusing drugs or alcohol can impose significant financial burdens on an employer, but also because such an employee's absences or diminished production frequently will create morale problems within the workplace." (*Id.* at pp. 897–898 (lead opn. of George, C. J.).)

A necessary implication of this reasoning is that *in the absence of a legitimate medical explanation*, test results showing a job applicant's drug use are generally a sufficient basis to deny employment. (See *Loder, supra*, 14 Cal.4th at p. 883, fn. 15 (lead opn. of George, C. J.); *Pilkington Barnes Hind v. Superior Court* (1998) 66 Cal.App.4th 28, 34 [77 Cal.Rptr.2d 596].) Another necessary implication of *Loder*'s reasoning is that the likely impacts on the employer's business operations—in the form of increased absenteeism, diminished productivity, greater health costs, increased safety problems, potential liability to third parties, and more frequent turnover—provide the appropriate yardstick for measuring the employer's legitimate interests in this context.

*Loder* is not directly relevant here because plaintiff is not challenging RagingWire's right to conduct preemployment drug testing, and because the program at issue in *Loder* sought to detect the presence of drugs "for which the applicant [had] no legitimate medical explanation" (*Loder, supra*, 14 Cal.4th at p. 856 (lead opn. of George, C. J.)). By contrast, plaintiff uses marijuana as a doctor-recommended treatment under the state Compassionate Use Act for a disabling physical condition. No evidence before this court establishes that use of a controlled substance under a doctor's recommendation poses the same risks of excessive absences and diminished productivity that a majority of this court relied on in *Loder* to uphold a drug testing program.

Considered strictly in terms of its physical effects relevant to employee productivity and safety, and not its legal status, marijuana does not differ significantly from many prescription drugs—for example, hydrocodone (Vicodin), hydromorphone (Dilaudid), oxycodone (OxyContin), methylphenidate (Ritalin), methadone (Dolophine), and diazepam (Valium)—that may affect cognitive functioning and have a potential for abuse. The medical use of any such drug poses some risks of absenteeism and impaired productivity. Indeed, many nonprescription medications taken for the common cold, seasonal allergies, and similar minor afflictions frequently have side effects, such as drowsiness or dizziness, that may impair productivity. The majority does not deny that the FEHA may require an employer to accommodate a disabled

employee's doctor-approved medical use of other substances that potentially could impair job performance.

I conclude, for these reasons, that plaintiff's complaint states a cause of action for disability discrimination under California's FEHA.

## III

In *Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167, this court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Id.* at p. 170.) That holding was based on the propositions that "an employer does not enjoy an absolute or totally unfettered right to discharge even an at-will employee," and that "an employer's traditional broad authority to discharge an at-will employee 'may be limited by statute . . . or by considerations of public policy.' " (*Id.* at p. 172.)

To support a claim for wrongful termination in violation of public policy, a policy must be "delineated in either constitutional or statutory provisions"; it must be " 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual"; it must have been well established "at the time of the discharge"; and it must be "fundamental" and "substantial." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 894 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) Here, to support his wrongful discharge claim, plaintiff relies on the public policies delineated in California's FEHA and Compassionate Use Act.

The policies delineated in the Compassionate Use Act will not support plaintiff's common law wrongful discharge claim. Although the aim of that initiative measure was to give qualified patients a right to use marijuana as treatment for illness without being subject to criminal prosecution or sanction (Health & Saf. Code, § 11362.5, subd. (b)(1)(A), (B)), the measure implicitly recognized that achieving that goal fully would require the cooperation of the federal government; to this end, the measure included as another of its purposes "[t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana" (*id.,* § 11362.5, subd. (b)(1)(C)). To date, however, that goal has not been achieved, and simple possession of marijuana remains a crime under federal law, with no medical necessity exception or defense. (*United States v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483, 486, 494 [149 L.Ed.2d 722, 121 S.Ct. 1711].) That being so, qualified patients cannot be said to *fully* enjoy a right under state law to use marijuana as a medical treatment, nor can the state's

policy be deemed sufficiently fundamental and substantial to support a common law wrongful discharge claim.

Nor can plaintiff support his claim by the policies delineated in the FEHA or other laws prohibiting discrimination against the disabled. As a general rule, the public policy against disability discrimination, articulated in the FEHA and other statutes, inures to the public's benefit and is sufficiently substantial and fundamental to support a cause of action for wrongful discharge in violation of public policy. (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159–1161 [77 Cal.Rptr.2d 445, 959 P.2d 752].) In the particular context of accommodating an employee's physician-approved use of marijuana to treat a disabling medical condition, however, that policy must be viewed against the backdrop of both federal criminal laws, which prohibit marijuana possession without a medical use exception, and the federal Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), which excludes from its protection "any employee or applicant who is currently engag[ed] in the illegal use of drugs, when the covered entity acts on the basis of such use" (42 U.S.C. § 12114(a)). A state law policy that rests on a proposition that Congress and federal law have rejected—here the proposition that marijuana has acceptable uses for medical treatment—cannot be considered sufficiently substantial and fundamental to support a common law tort claim for wrongful discharge.

Because plaintiff has not identified a policy that is sufficiently fundamental and substantial to support his wrongful discharge claim, I agree that the trial court did not err in sustaining RagingWire's demurrer to that claim.

## IV

California voters enacted the Compassionate Use Act to allow marijuana to be used for medical treatment on a doctor's recommendation. Although there have been well-publicized abuses of the law for financial gain or personal gratification, the Legislature has acted to curb those abuses while still allowing marijuana to be available for those with genuine medical need. (See, e.g., Health & Saf. Code, §§ 11362.7–11362.9, added by Stats. 2003, ch. 875.) By its decision today, however, the majority has seriously compromised the Compassionate Use Act, denying to those who must work for a living its promised benefits "in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or . . . other illness" (Health & Saf. Code, § 11362.5, subd. (b)(1)(A)). The majority gives employers permission to fire any employee who uses marijuana on a doctor's recommendation, without requiring the employer to show that this medical use will in any way impair the employer's business interests. Absent such a showing of business impairment, I would hold that neither the Compassionate

Use Act nor the FEHA allows an employer to fire an employee for offsite and off-duty, doctor-recommended marijuana use as a medical treatment.

I would reverse the Court of Appeal's judgment.

Moreno, J., concurred.