Filed 11/23/15  P. v. Skytte CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C074100 |
| Plaintiff and Respondent, | (Super. Ct. No. CM035069) |
| v. | |
| TIMOTHY OLE SKYTTE, | |
| Defendant and Appellant. | |

California law provides limited immunity from prosecution for certain crimes involving marijuana where the marijuana is used for medical purposes and other conditions are met.  (*People v. Mentch* (2008) 45 Cal.4th 274, 290; *People v. Mower* (2002) 28 Cal.4th 457, 470.)  Under the federal law, however, it is illegal for any private person to possess marijuana.  (21 U.S.C. §§ 812, schedule I(c)(10), 844(a).)  California cannot legalize marijuana without Congressional approval.  (*Gonzales v. Raich* (2005) 545 U.S. 1, 26-29 [162 L.Ed.2d 1, 24-27] (*Raich*); *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 926 (*Ross*).)  This difference between

1

state and federal law presents several difficulties, one of which is a well-documented banking problem. (See, e.g., Chemerinsky et al, *Cooperative Federalism and Marijuana Regulation* (2015) 62 UCLA L.Rev. 74, 91, fn. omitted ["Perhaps the most profound and well-documented consequence of marijuana's prohibited status at the federal level is the unavailability of even the most rudimentary banking services for those engaged in marijuana commerce"].) The verdicts here reflect that dissonance.

After defendant Timothy Ole Skytte advanced a medical marijuana defense, a jury acquitted him of cultivating marijuana (Health & Saf. Code, § 11358)[1] and possession of marijuana for sale (§ 11359). The same jury found defendant guilty of money laundering (Pen. Code, § 186.10, subd. (a)), based on three large deposits of cash.[2] The trial court sentenced defendant to the mid-term of two years in prison and granted him bail pending appeal.

On appeal, defendant raises multiple challenges to his money laundering conviction. In essence, his argument is that he cannot be convicted of laundering the proceeds from medical marijuana because medical marijuana is "legal" in California. As we explain, defendant is mistaken. Accordingly, we shall affirm.

## FACTS

When over $10,000 in cash is deposited to a bank account, the bank must fill out a currency transaction report and submit it to the Department of Justice. The report includes the account holder's line of work.

---

[1] Further undesignated statutory references are to the Health and Safety Code.

[2] Defendant also pled no contest to possession of a stun gun (Pen. Code, § 12651) as an infraction.

On three consecutive days, December 28, 29, and 30, 2010, substantial cash amounts just below $10,000 were deposited to defendant's bank account. He personally deposited $9,000 on December 29. The bank employee handling the deposit noticed that the money "reeked" of marijuana, and filed a suspicious activity report. On both December 28 and 30, $9,500 in cash was deposited into defendant's account by an unknown person. On January 4, 2011, defendant wired $28,000 to Bidwell Title and Escrow.

On August 18, 2011, officers from the Butte County Sheriff's Office searched defendant's property. The property was two and a half acres in a rural mountain area that had been ravaged by fire. Officers found two fenced gardens. The garden closest to the house contained 24 marijuana plants. Four medical marijuana recommendations were posted in this garden. A second garden further from the house contained 30 marijuana plants and had six medical marijuana recommendations posted. Inside the house, officers found a safe containing $21,560 in cash, various forms of marijuana, and paperwork relating to a medical marijuana collective.

Defendant told the officers the 24 plants near the house belonged to him, his wife, and two others. The other 30 plants belonged to Jeffrey Sanford. Sanford was the president of the 30th Street Patient Collective in San Diego.[3] The collective was formed in 2008; its corporate status had been recently changed to a nonprofit mutual benefit corporation. The collective had a seller's permit from the Board of Equalization and filed tax returns with the state and the IRS. Its purpose was for a group of patients to come together under Proposition 215 and collectively cultivate and share medical marijuana.

---

[3] Sanford testified at the preliminary hearing after waiving his Fifth Amendment rights. Sanford was arrested after he testified. He was unavailable at trial and his prior testimony was read to the jury.

Sanford leased property from defendant for the marijuana garden. Sanford had paid defendant in cash for marijuana in December 2010.

Defendant told officers he did backhoe work. Officers found a backhoe purchased in April 2011 on his property. Defendant said the money in the safe was from backhoe work. Defendant's mortgage was $666 and he received $500 in rent from Sanford. He also received $500 a month in rent for another property on Ishi Trail, where officers also found a fenced in "marijuana grow." Defendant told officers he received $24,000 in mid-2010 from settlement of a pickup truck crash.

## DISCUSSION

### I

### *The Law*

A. *Money Laundering*

Penal Code section 186.10, California's money laundering statute, provides in part: "(a) Any person who conducts or attempts to conduct a transaction or more than one transaction within a seven-day period involving a monetary instrument or instruments of a total value exceeding five thousand dollars ($5,000) . . . through one or more financial institutions (1) with the specific intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any criminal activity, or (2) knowing that the monetary instrument represents the proceeds of, or is derived directly or indirectly from the proceeds of, criminal activity, is guilty of the crime of money laundering. . . ." A transaction includes a deposit into or withdrawal from a financial institution. (Pen. Code, § 186.9, subd. (c).) United States currency qualifies as a monetary instrument. (*Id*., subd. (d).) Criminal activity includes "a criminal offense committed in another jurisdiction punishable under the laws of that jurisdiction by death or imprisonment for a term exceeding one year." (*Id*., subd. (e).)

The purpose of the money laundering law is to criminalize those who use the financial institutions of California "to promote criminal activity or to transact proceeds derived from a crime." (*People v. Mays* (2007) 148 Cal.App.4th 13, 22 (*Mays*).) A prosecution for money laundering based, as here, on the knowledge of criminal proceeds prong of the statute, "requires proof that (1) the defendant's entire business was illegal, (2) there were deposits of $5,000 or more in criminally derived funds, or (3) there was a transfer of all funds out of the account." (*Id.* at p. 32.)

B. *California Marijuana Laws*

Both cultivation and possession for sale of marijuana are illegal in California. (§§ 11358, 11359.) California law does, however, provide *limited immunity* for certain crimes where the marijuana is used for medical purposes. In 1996, California voters approved Proposition 215 and adopted the Compassionate Use Act (CUA) (§ 11362.5). Under the CUA, a patient or his primary caregiver "who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician," has an affirmative defense to the crimes of possession or cultivation of marijuana. (*Id.*, subd. (d); see *People v. Wright* (2006) 40 Cal.4th 81, 84.) The CUA immunizes specific persons from prosecution under two sections of the Health and Safety Code. Thus, the CUA grants only "limited immunity from prosecution." (*People v. Mower, supra,* 28 Cal.4th at p. 471.)

In 2003, the Legislature passed the Medical Marijuana Program (MMP) (§ 11362.7 et seq.). The MMP "immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients. [Citation.]" (*People v. Mentch, supra* 45 Cal.4th at p. 290.) The MMP provides that specified individuals "shall not be subject, on that sole basis, to criminal liability" under sections 11357 (possession), 11358 (cultivation), 11359 (possession for sale), 11366 (maintaining location for selling, giving away or using controlled substances), 11366.5 (managing location for manufacture or storage of controlled substance), or 11570 ("drug den" abatement law). (§ 11362.765,

5

subd. (a).)  This immunity extends to those "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes." (§ 11362.775.)

The CUA did not create "a broad right to use marijuana without hindrance or inconvenience."  (*Ross, supra,* 42 Cal.4th at p. 928.)  "No state law could completely legalize marijuana for medical purposes because the drug remains illegal under federal law (21 U.S.C. §§ 812, 844(a)), even for medical users [citations]."  (*Id.* at p. 926.)

C.  *Federal Marijuana Laws*

Under the federal Controlled Substances Act it is illegal for any private person to possess marijuana.  (21 U.S.C. §§ 812, schedule I(c)(10), 844(a); see *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 811-812.)  In *Raich, supra,* 545 U.S. 1 [162 L.Ed.2d 1], the United States Supreme Court held this proscription applies to marijuana used for medical purposes.  "Whereas some other drugs can be dispensed and prescribed for medical use, see 21 U.S.C. § 829, the same is not true for marijuana.  Indeed, for purposes of the Controlled Substances Act, marijuana has 'no currently accepted medical use' at all.  § 811."  (*U.S. v. Oakland Cannabis Buyers' Co-op.* (2001) 532 U.S. 483, 491 [149 L.Ed.2d 722, 732].)

The federal penalty for manufacturing, distributing, or possession with the intent to distribute marijuana is at least five years in prison.  (21 U.S.C. § 841, subd. (b)(1)(D).)

D.  *The Criminal Activity Underlying the Money Laundering Charge*

At trial, the People pursued the money laundering charge with *either* a violation of California or federal law serving as the underlying criminal conduct.  The People argued defendant did not meet the requirements of the CUA and the MMP, and continue to make that argument on appeal.  The verdict does not indicate whether the jury based its verdict on state or federal law (in finding the underlying criminal activity).

6

Although the jury acquitted defendant on the marijuana charges, the jury still could have found the criminal activity underlying the money laundering charge was a violation of California law. The jury could have concluded (correctly, as we discuss *post*) that the limited immunity of the CUA and the MMP did not apply to money laundering. Moreover, we would accept the verdicts, even if inconsistent. "The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying, consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt, and juries the power to acquit whatever the evidence." (*People v. Palmer* (2001) 24 Cal.4th 856, 860.) "It is possible that the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity.' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 600.)

Defendant raises several challenges to his conviction for money laundering. The first two assume the underlying criminal activity is an offense under California law. The third addresses using a violation of federal law as the underlying criminal activity. We address each in turn.

II

*Failure to Instruct on Mistake of Fact*

Defendant contends the trial court erred in failing to instruct on mistake of fact as to the money laundering count. He contends he did not know the money he deposited was derived from criminal activity because he believed his activities were legal. He asserts the trial court had a duty to instruct sua sponte on the defense of mistake of fact.

A. *Background*

Defendant proposed three very similar instructions on mistake of fact. All the instructions began: "The defendant is not guilty of . . . money laundering in violation of Penal Code section 186.10(a), if he did not have the intent or mental state required to commit the crime because he did not know a fact or mistakenly believed a fact."

7

Defendant also proposed an instruction on mistake of *law* as to the counts charging cultivation of marijuana and possession of marijuana for sale.

In discussing these proposed instructions, the trial court indicated it was not inclined to give any of the submitted instructions and invited comments from counsel. Defense counsel indicated he was submitting as to the mistake of fact instruction, but argued in favor of the mistake of law instruction. The court refused that instruction.[4]

B. *Obligation to Instruct on Mistake of Fact*

"In a criminal case, a trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citation.]" (*People v. Earp* (1999) 20 Cal.4th 826, 885.) "Included within this duty is the '. . . obligation to instruct on defenses, . . . and on the relationship of these defenses to the elements of the charged offense . . .' where '. . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . .' [Citation.]" (*People v. Stewart* (1976) 16 Cal.3d 133, 140.) The failure to instruct on a defense--whether sua sponte or at the defendant's request--is not error if there was no substantial evidence supporting the defense. (See *People v. Rivera* (1984) 157 Cal.App.3d 736, 743.)

The mistake-of-fact defense is based on Penal Code section 26, paragraph Three, which provides that a person is not criminally liable where he "committed the act or made the omission charged under an ignorance or mistake of fact, which disproves a criminal intent." "Put another way, people do not act unlawfully if they commit acts based on a reasonable and honest belief that certain facts and circumstances exist which,

---

[4] Defendant contends it is unclear whether the court actually ruled on the mistake of fact instruction. We deem the trial court to have adopted its intended ruling as its final ruling once defendant made no further argument. In this context, we construe defense counsel's use of the term "submit" in accordance with its primary meaning, "to yield to, surrender or to acquiesce. [Citation.]" (*In re Richard K.* (1994) 25 Cal.App.4th 580, 588.) Because we find the trial court *did* rule, we need not address defendant's argument that his counsel was ineffective in failing to obtain a ruling.

if true, would render the act lawful. [Citations.]" (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.) "A mistake of fact occurs when a person understands the facts to be other than what they are. [Citation.]" (*People v. Orlosky* (2015) 233 Cal.App.4th 257, 275.)

The trial court did not err in failing to instruct on mistake of fact. The only "fact" defendant claims as a mistake is the legality of the marijuana activities. We have, however, repeatedly held that a mistaken belief that one's activities with regard to marijuana are in compliance with California's laws on medical marijuana is a mistake of *law*, not a mistake of fact. (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 775-776; *People v. Young* (2001) 92 Cal.App.4th 229, 235, 237.) Defendant contends those cases are distinguishable because they arose under the CUA, and not the later, broader MMP. Defendant fails to explain how our reasoning in those cases would differ under the later law. Defendant also contends the mistake of law defense applies only to the one who formed and organized the collective, here Sanford.[5] Again, he fails to explain why a mistaken belief as to the legality of the marijuana activities would be a mistake of law by Sanford, but a mistake of fact by him. Because we find the trial court did not err in refusing to instruct on mistake of fact, we need not address defendant's contention that the court had a duty to so instruct sua sponte.

---

[5] In a curious aside, defendant suggests a mistake of law defense based on entrapment by estoppel may be available. The entrapment by estoppel defense rests "on the premise that the government may not actively provide assurances that conduct is lawful, then prosecute those who act in reasonable reliance on those assurances. Under these limited circumstances, fundamental fairness supports the defense, even when the prosecution can prove each element of the crime." (*People v. Chacon* (2007) 40 Cal.4th 558, 568-569, fn. omitted.) Entrapment by estoppel has no application here. The Attorney General Guidelines on marijuana grown for medical use, which Sanford claimed he followed, clearly state: "the manufacture, distribution, or possession of marijuana is a federal criminal offense" and "California did not 'legalize' medical marijuana."

9

Moreover, any error in failing to instruct on mistake of fact was harmless. "[A] failure to instruct where there is a duty to do so can be cured if it is shown that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' [Citation.]" (*People v. Stewart, supra,* 16 Cal.3d at p. 140.) Here, the jury was instructed that to find defendant guilty of money laundering, it had to find that "defendant knew the monetary instruments represented the proceeds of criminal activity or were derived directly or indirectly from the proceeds of criminal activity." Thus, in finding defendant guilty of money laundering the jury found defendant *knew* the money was from illegal activities, a finding directly adverse to his mistake of fact defense.

III

*Extending Medical Marijuana Defense to Money Laundering*

Defendant contends the trial court erred in failing to extend the medical marijuana defense to money laundering. He reasons, "If immunity directly applied to growing and providing marijuana, then the funds derived as reimbursement are protected in the same way." He relies on "logic" not law, arguing, without citation to authority, that "the instruction logically applied to the money laundering charge."

Defendant's argument is misplaced. As discussed, the CUA and the MMP provide limited immunity against prosecution for certain specified crimes; money laundering is not one of the specified crimes. There was no statutory basis for giving an immunity instruction as to the money laundering count, and defendant provides no other legal basis for the instruction.

Further, whatever the legal status of defendant's marijuana activities under California law, marijuana is illegal under federal law. The criminal activity underlying the state money laundering charge is permitted to be a criminal offense *committed in another jurisdiction,* so long as that offense is "punishable . . . by death or imprisonment

10

for a term exceeding one year" in the jurisdiction in which it is committed. (Pen. Code, § 186.9, subd. (e).) We turn now to the federal law aspect of this case.

IV

*Instruction on Federal Marijuana Offense*

Defendant contends the trial court erred in instructing on federal marijuana law. He contends that if he had limited immunity under the CUA and the MMP, he was also immune from state charges based on an underlying federal law. He further contends the instruction on federal law was duplicative and confusing, the instruction improperly directed a verdict, and the instruction failed to submit the factual question of federal jurisdiction to the jury.

A. *Background*

Prior to trial, the prosecutor raised the issue that money laundering required a criminal activity that was a felony in California or a crime in another jurisdiction that results in imprisonment or death. The People's position was that regardless of applicability of the medical marijuana defense, money laundering could be based on using money obtained from activity that is illegal under federal law.

The People proposed an instruction that read: "Title 21, section 841(b)(1)(d) of the United States Code states that it is a crime punishable by up to 5 years in prison to manufacture, distribute, or dispense, or possess with intent with intent to manufacture, distribute, or dispense less than 50 Kilograms (approximately 110 pounds) of marijuana."

Defendant objected to this instruction, contending the People were impermissibly changing the theory of the crime after the preliminary hearing where the People had not mentioned federal law. Defendant also challenged the sufficiency of the evidence to support money laundering.

The trial court expressed concern about the language of the instruction that referred to punishment, but was inclined to give an instruction on this theory. The People proposed an instruction that "transportation, manufacturing or selling marijuana is a

11

crime under federal law and satisfies the criminal activity element of the California money laundering instruction." After further discussion, the court and the People agreed on similar language for the instruction.

Defendant objected. First, he claimed the instruction directed the jury to find an element of the crime and "directive instructions are not appropriate" and are unlawful. Second, he questioned the effect, if any, of federal sentencing guidelines. The People represented that five years was the lowest possible sentence under federal law.

The court instructed the jury: "Under Federal law, it is unlawful to manufacture, distribute, dispense or possess with intent to manufacture, distribute or dispense less than 50 Kilograms (approximately 110 pounds) of marijuana. If the People have proven this offense beyond a reasonable doubt, a violation of federal law may satisfy the 'criminal activity' requirement under the State of California Money Laundering statute as defined in Penal Code section 186.9."

B. *Enforcement of Federal Law*

Defendant contends that if he had immunity under the CUA and MMP, he cannot be prosecuted based on federal law because California courts do not enforce federal law. He relies on *People v. Tilehkooh* (2003) 113 Cal.App.4th 1433, where we held a defendant could assert the CUA as a defense to a violation of probation for possessing and using marijuana, rejecting the argument that the defense was not available because possessing marijuana was a federal offense. (*Id*. at p. 1437.) We explained that state courts do not enforce federal laws and the state "can only reach conduct subject to the federal criminal law by incorporating the conduct into the state law." (*Id*. at p. 1446.) If the People could not punish defendant under California's criminal law because state law provided immunity, it could not punish him for the same conduct by the sanction of probation revocation. "The state cannot do indirectly what it cannot do directly." (*Ibid*.)

*Tilehkooh* is distinguishable. There, in revoking the defendant's probation the state punished him *solely* because he violated federal law. Here, defendant's conviction

for money laundering does *not* punish defendant for cultivating or possessing marijuana and so does not enforce or punish a violation of federal law. Instead, money laundering involves separate conduct; the criminal act is the use of a financial institution to transact proceeds known to be derived from a crime. (*Mays, supra,* 148 Cal.App.4th at p. 22.) As we have explained, not only does the statute *fail to limit* the underlying criminal activity to California crimes, it *expressly expands* the scope of the qualifying activity to include activities defined as crimes in other jurisdictions. Defendant's argument to the contrary fails.

C. *Duplicative and Confusing*

Defendant contends the instruction on federal law was duplicative and confusing. He asserts that if his criminal activities were properly classified as criminal under California law, the instruction on federal law was superfluous, and if he had qualified immunity under state law he could not be convicted of money laundering on the basis of federal law. We have rejected the latter argument *ante*. As to the former, defendant does not explain why it is improper to instruct on alternative theories of a crime or how he was prejudiced by such instruction. Where a crime can be committed in more than one way and the jury finds defendant committed it in the manner first addressed in the instructions, the jury need not consider the remaining instructions as to various other ways to commit the crime. Those remaining instructions are simply disregarded; they are not improper or duplicative.

Defendant's remaining argument on this point is a barrage of undeveloped points; he claims there was lack of notice, a legally incorrect theory submitted to the jury, and a violation of due process. Defendant fails to explain how the instruction constituted any of these. It is not this court's responsibility to examine undeveloped claims, or to make defendant's arguments for him. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) We decline to do so.

13

D. *Instruction as Directed Verdict*

The instruction initially proposed by the People on federal law set forth the sentence for a violation. The trial court was concerned about instructing on punishment and the instruction was revised to eliminate the reference to the sentence. As given the instruction concluded: "If the People have proven this offense beyond a reasonable doubt, a violation of federal law may satisfy the 'criminal activity' requirement under the State of California Money Laundering statute as defined in Penal Code section 186.9."

Defendant contends this instruction improperly directed a verdict on an element of money laundering, namely that cultivating marijuana or possessing it for sale was punishable under federal law by imprisonment or death and thus qualified as criminal activity under the statute.

"It has long been recognized that a trial judge 'may not direct a verdict of guilty no matter how conclusive the evidence.' [Citations.] . . . [¶] The prohibition against directed verdicts 'includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true.' [Citation.] . . . '[N]o fact, not even an undisputed fact, may be determined by the judge.' [Citations.]" (*People v. Figueroa* (1986) 41 Cal.3d 714, 724.) "The rule prohibiting verdicts directed against an accused emanates from the guarantee of due process and the right to a jury trial. Due process 'protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged' [citation]. It requires the state to prove ' "every ingredient of an offense beyond a reasonable doubt . . . ." ' [Citation.]" (*Id*. at p. 725.)

In *Figueroa*, a prosecution for the sale of unqualified securities, the court held it was error to instruct the jury that the promissory notes involved in the transaction were securities under the Corporate Securities Law because that determination involved various issues of fact. (*People v. Figueroa, supra,* 41 Cal.3d at p. 740.) "The court's

14

instruction erroneously removed an element of the section 25110 charge from the jury's consideration." (*Id.* at p. 741.)

In *People v. Brown* (1988) 46 Cal.3d 432, the defendant was charged with murder, with the special circumstance that the victim was a peace officer engaged in the performance of his or her duties (Pen. Code, § 190.2, subd. (a)(7)). The instruction on the special circumstance stated: " 'For the purposes of these instructions, a Garden Grove Regular Police Officer and a Garden Grove Reserve Police Officer are peace officers.' " (*Brown*, at p. 443, italics omitted.) Our Supreme Court held this instruction did not remove an element of the special circumstance from the jury's consideration in violation of due process. It explained: "The challenged final sentence took no element from the jury; it merely instructed the jury on a point of statutory law--a point not open to dispute--that a Garden Grove police officer is a peace officer. [Citations.] The jury was left to make all essential factual determinations, including whether the victim was a Garden Grove police officer." (*Id.* at pp. 443-444, fn. omitted; see also *People v. Moore* (1997) 59 Cal.App.4th 168, 179-187 [in prosecution for conspiracy to misappropriate public funds, trial court properly instructed jury that Lost Hills Water District was a "district"].)

In *People v. Runnion* (1994) 30 Cal.App.4th 852, at page 854, the defendant was charged with robbery, with a personal firearm use allegation (Pen. Code, § 12022.5, subd. (a)). The trial court omitted the portion of the instruction defining "firearm"; instead, it simply instructed that, " 'The word "firearm" includes handgun.' " (*Runnion*, at p. 855.) On appeal, the defendant contended this instruction relieved the state of its burden of proving the object the defendant used during the robbery was a firearm. (*Id.* at p. 856.) The court rejected the contention: "The court did not instruct the jury that a particular element had been established, as it would have done had it instructed the jury that People's No. 6 was a firearm or a handgun. Instead, the court merely, and correctly, instructed that the legal definition of a firearm included a handgun. The jury was left to

15

determine whether People's No. 6, the item at issue in the case before them, was a handgun." (*Ibid*.)

In *People v. James* (1998) 62 Cal.App.4th 244, the trial court instructed the jury that manufacturing methamphetamine was a dangerous felony. The appellate court affirmed. First, it held that manufacturing methamphetamine was in fact a dangerous felony. (*Id.* at p. 271.) Next, it held the trial court did not err in so instructing the jury. "As we held in part I, *ante*, manufacturing methamphetamine is an inherently dangerous felony as a matter of law. Here, the challenged instructions correctly so informed the jurors. They still had to find every factual element of the crime, including whether defendant's conduct constituted the felony of manufacturing methamphetamine, and whether her children's deaths occurred during or as a direct causal result of the commission or attempted commission of this felony. Thus, the instructions are not analogous to the one struck down in *Figueroa*. Rather, they are analogous to the ones upheld in *Brown* and *Runnion*. We conclude they did not take any issue of fact away from the jury." (*Id*. at pp. 272-273.)

We find the instruction here analogous to those in *Brown, Runnion,* and *James*, and distinguishable from *Figueroa*. The challenged instruction here did not establish a fact that was in dispute in the case. The fact that the punishment for violating federal laws prohibiting possession and distribution of marijuana met the imprisonment requirement to classify the laws' violation as "criminal activity" under the money laundering statute was "a point of statutory law--a point not open to dispute." (*People v. Brown, supra,* 46 Cal.3d at p. 443.) The instruction did not take any fact away from the jury; the jury still had to determine whether defendant had made deposits in the amount and within the time period required for money laundering, whether the cash was derived from illegal activity, and whether defendant knew of its illegal nature. The challenged instruction did not direct a verdict.

16

E. *Factual Issue of Jurisdiction*

Defendant contends the instruction failed to submit to the jury the factual issue of whether there was federal jurisdiction over the marijuana defendant provided to the 30th Street Patient Collective. He contends he had a constitutional right to a jury trial on jurisdictional facts because the jurisdictional fact involving " 'another jurisdiction' " in Penal Code 186.9, subdivision (e) was the " 'functional equivalent' " of an element of a crime. We find this argument difficult to understand; to the extent that we understand it, it fails to persuade.

Defendant cites two cases in support of this argument. First, he quotes a partial sentence from *People v. Collins* (1895) 105 Cal. 504, at page 509: "The federal jurisdiction, therefore, involves a question of fact . . . ." The issue in *Collins* was whether the information established the crime was committed within the jurisdiction of the superior court because federal courts have exclusive jurisdiction over certain areas. (*Id.* at p. 508.) The relevance of this authority is not apparent because there is no issue of exclusive jurisdiction here. Defendant's briefing does not enlighten us.

Defendant next cites *People v. Betts* (2005) 34 Cal.4th 1039, a case in which some of the charged criminal acts were committed outside of California. There, the defendant argued he was entitled to a jury trial on jurisdictional facts, making the same "functional equivalent" of an element argument that defendant makes here. (*Id.* at p. 1054.) Our Supreme Court disagreed: "Because territorial jurisdiction is a procedural matter that relates to the authority of California courts to adjudicate the case and not to the guilt of the accused or the limit of authorized punishment, a jury trial on the factual questions that establish jurisdiction is not required by the federal Constitution." (*Ibid.,* fn. omitted.) Defendant contends that here federal jurisdiction *does* relate to his guilt, so a jury trial is required. Tellingly, he also concedes that "the particular issues in the *Betts* case are not salient here."

17

We understand defendant's argument to contend that his jury should have been tasked with deciding whether the federal government had *jurisdiction to prosecute* based on the marijuana activities of the 30th Street Patient Collective. The United States Supreme Court definitively answered that question in *Raich, supra,* 545 U.S. 1, at page 22 [162 L.Ed.2d 1, 22], which held the application of the Controlled Substances Act to private individuals who grew and used marijuana for non-commercial, medicinal purposes wholly intrastate was a valid exercise of the Congress's authority under the commerce clause. This challenge to the trial court's instruction also fails.

V

*Sufficiency of the Evidence of Money Laundering*

Finally, defendant contends insufficient evidence supports his money laundering conviction. He argues there is insufficient evidence he knew the money he deposited came from illegal activities, there was insufficient evidence that the threshold amount ($5,000) came from those activities because he had received a settlement of $24,000 which accounted for the bulk of the deposits, and there was no evidence of federal jurisdiction or the penalty qualification for the federal crime.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence-that is, evidence that is reasonable, credible, and of solid value-from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

To constitute money laundering under the theory that defendant conducted a transaction knowing that the monetary instrument represented proceeds of a criminal activity, there must be proof "that at least $5,000 of the amount involved in the transaction is related, directly or indirectly, to criminal activity." (*Mays, supra,* 148 Cal.App.4th at p. 31.) As we have summarized *ante*, the jury heard evidence that cash

18

deposits totaling $28,000 were made to defendant's account on three consecutive days in December 2010, each deposit being just under the limit for the federal reporting requirements, with at least one $9,000 deposit made by defendant. One deposit "reeked" of marijuana. Defendant had a letter from Sanford dated July 23, 2011, stating that defendant had a relationship with the 30th Street Patient Collective and regularly grew medical grade marijuana to help supply a collective of over 3,910 members. The letter added that defendant also occasionally transported multiple pounds of marijuana to San Diego. Sanford had paid defendant for marijuana that December. Sanford paid $3 to $7 for a gram of marijuana (approximately $1,350 to $3,100 per pound). This is substantial evidence that the cash defendant deposited came from the marijuana he grew and provided to the collective.

Defendant contends this evidence is insufficient because, as he told the police, he had received a settlement of $24,000 for an accident and this amount constituted most of the three deposits. There was ample reason for the jury to disbelieve this evidence, and it was permitted to do so. While defendant claimed he received the settlement in *mid*-2010, the deposits were inexplicably made *in cash, in three installments, and in December*. In denying the motion for a new trial, the trial court found that this statement was self-serving and not credible.

That defendant made the deposits on three consecutive days in amounts just under the federal reporting requirement certainly suggests he knew the cash came from an illegal activity. Regardless of whether defendant's marijuana-related activity was illegal under California law, it was indisputably illegal under federal law. No evidence of defendant's knowledge on this point was required. "[I]n the absence of specific language to the contrary, ignorance of a law is not a defense to a charge of its violation." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 396.) We have rejected defendant's arguments that the jury had to decide federal jurisdiction or the penalty qualification of federal law. Substantial evidence supports the conviction.

19

## DISPOSITION

The judgment is affirmed.

/s/

Duarte, J.

We concur:

/s/

Raye, P. J.

/s/

Mauro, J.