IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harrisburg Area Community College,　　　:
　　　　　　　　　　Petitioner　　　　　:
　　　　　　　　　　　　　　　　　　　:　No.　654 C.D. 2019
　　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:　Argued:　May 11, 2020
Pennsylvania Human Relations　　　　　　:
Commission,　　　　　　　　　　　　　:
　　　　　　　　　　Respondent　　　　　:


BEFORE:　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　　HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE McCULLOUGH　　　　　　　　　　　　　　FILED:　October 29, 2020


Harrisburg Area Community College (HACC) petitions for review from the March 26, 2019 interlocutory order of the Pennsylvania Human Relations Commission (PHRC), which denied HACC's motion to dismiss Holly Swope's (Swope) PHRC complaint for legal insufficiency.[1]

---

[1] After the PHRC issued its interlocutory order, HACC sought permission to appeal to this Court, pursuant to section 702(b) of the Pennsylvania Judicial Code, 42 Pa.C.S. §702(b), and Rule 1311 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1311. On September 11, 2019, we granted HACC's petition for permission to appeal the PHRC's interlocutory order. Thereafter, HACC filed an application to amend the PHRC's order to authorize immediate appellate review in accordance with section 702(b) of the Judicial Code, 42 Pa.C.S. §702(b). Although the PHRC granted HACC's application in a supplemental order issued on May 7, 2019, as we concluded in our September 11, 2019 order granting HACC's permissive appeal, because the PHRC issued the supplemental order more than 30 days after the application had been filed, the application was deemed denied pursuant to Rule 1311(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1311(b). "Where the administrative agency . . . refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper
**(Footnote continued on next page…)**

## Background

HACC operates a nursing program that provides students the opportunity to earn an associate degree and become eligible to take the Pennsylvania State Board of Nursing's registered nurse licensing examination. Once admitted to the program, students must successfully complete a series of nursing courses that feature both class work and clinical training. HACC requires all candidates in the nursing program, on an annual basis, to submit to a urine screening test for the presence of drugs, and if they test positive, they will be removed from the nursing program. (Reproduced Record (R.R.) at 197a.)

On October 25, 2018, Swope filed a discrimination complaint with the PHRC. As alleged in the complaint, Swope has a disability due to suffering from Post-Traumatic Stress Disorder and Irritable Bowel Syndrome. According to the complaint, Swope is able to complete the essential components of HACC's nursing program as long as she is granted the reasonable accommodation of being permitted to take her legally prescribed medical marijuana medication. (PHRC Complaint ¶¶ 6-8, R.R. at 197a.)

Also according to the complaint, in July 2018, Swope informed Jill Lott (Lott), HACC's Director of Nursing, of her medical condition and requested that she be permitted to use the medical marijuana she had been prescribed by her physician as an accommodation for her disability. Swope alleged in the complaint that Lott informed her that she must comply with HACC's drug policy to continue in the nursing program, as her request would violate HACC's contracts with various clinics. Lott

---

mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal." Pa.R.A.P. 1311, *Note.* Subsequent to the filing of the petition for permission to appeal, Rule 1311 of the Pennsylvania Rules of Appellate Procedure was amended to provide that a permissive appeal may only be sought by petition for permission to appeal and not by a petition for review under the Note to Rule 1311.

advised Swope that she would be required to undergo a drug test in 90 days. (PHRC Complaint ¶¶ 9-13, R.R. at 197a.) Swope alleged that HACC violated section 4(a)(3) of the Pennsylvania Fair Educational Opportunities Act (PFEOA)[2] and requested all available and appropriate remedies under the Pennsylvania Human Relations Act (PHRA).[3] (PHRC Complaint ¶¶ 14-15, R.R. at 197a-98a.)

On January 18, 2019, HACC filed a motion to dismiss the complaint, arguing that it was legally insufficient because Swope had failed to allege actionable violations of either PHRA or PFEOA. In particular, HACC contended that the definitions of disability in PHRA and PFEOA exclude from coverage current users of controlled substances, that marijuana is considered a controlled substance under federal law and, therefore, that neither PHRA nor PFEOA require accommodation of marijuana use, even if such use is permitted under the Pennsylvania Medical Marijuana Act (MMA).[4] For similar reasons, HACC also argued that the PHRC lacked subject matter jurisdiction to investigate Swope's allegations. (R.R. at 3a-7a.)

On March 26, 2019, the PHRC issued an interlocutory order denying HACC's motion to dismiss. The PHRC noted that the definition of disability under section 4(p.1)(3) of PHRA, 43 P.S. §954(p.1)(3), excludes current, illegal users of controlled substances, but argued that under section 303(a) of the MMA, 35 P.S.

---

[2] Act of July 17, 1961, P.L. 776, *as amended*, 24 P.S. §5004(a)(3). Section 4(a)(3) of the PFEOA provides that "it shall be an unfair educational practice for an educational institution . . . [t]o expel, suspend, punish, deny facilities or otherwise discriminate against any students because of race, religion, color, ancestry, national origin, sex, handicap or disability." *Id.* The PHRC is vested with the authority to administer the PFEOA. Section 5 of the PFEOA, 24 P.S. §5005.

[3] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

[4] Act of April 17, 2016, P.L. 84, 35 P.S. §§10231.101-10231.2110.

§10231.303(a), marijuana is lawful in Pennsylvania if prescribed as medication by a physician. (PHRC Order, March 26, 2019, R.R. at 58a.) The PHRC determined that

> so long as the use of the marijuana is consistent with the parameters of the [MMA], the [Pennsylvania] Legislature declares it is not illegal. To be excluded from the coverage of [s]ection 4(p.1)(3) [of PHRA], the use has to be "illegal." Here, it is alleged that [Swope's] use was legal.

(PHRC Order, March 26, 2019, R.R. at 58a.) The PHRC reasoned that Swope's "use of marijuana to mitigate her suffering [made] the present claim viable under the [MMA] in combination with PHRA and PFEOA" and, therefore, denied HACC's motion to dismiss. *Id.*

## Discussion

### A. The Parties' Arguments

As stated in our September 11, 2019 order granting HACC's permissive appeal, the sole issue on appeal is whether the anti-discrimination provisions of PHRA and PFEOA require accommodation of Swope's lawful use of medical marijuana under the MMA. HACC argues that both PHRA and PFEOA exclude marijuana users from disability discrimination protections. While HACC acknowledges that PHRA and PFEOA require it to provide reasonable accommodations to qualified disabled students, it contends that individuals who currently and illegally use controlled substances, including marijuana, are exempted from disability definitions under both statutes. HACC maintains that both PHRA and PFEOA incorporate the definition of controlled substances in the federal Controlled Substances Act (Federal CSA),[5] which defines marijuana as a Schedule I controlled substance, meaning it has no medically acceptable use under federal law. Thus, according to HACC, because marijuana use

---

[5] 21 U.S.C. §§801-971.

is considered illegal under the Federal CSA, individuals who use marijuana are excluded from both PHRA's and PFEOA's disability definitions, regardless of whether such use is considered medicinal and/or lawful under Pennsylvania law.

HACC also asserts that although the MMA legalized the use of marijuana for certain medicinal purposes, the MMA did not amend either PHRA's or PFEOA's definitions for illegal use of controlled substances, with both statutes continuing to rely on the federal definition of controlled substances. First, HACC notes that although the MMA explicitly amended The Controlled Substance, Drug, Device and Cosmetic Act (Pennsylvania Drug Act),[6] the MMA makes no mention of either PHRA or PFEOA. Second, HACC argues that the MMA only prohibits employers from taking adverse actions against employees due to their *status* as certified users of medical marijuana, but, the MMA's "employment discrimination prohibition mentions nothing about expanding the [PHRC's] jurisdiction to investigate and prosecute employers for failing to accommodate medical marijuana use." (HACC's Br. at 13-14.) Nor does the MMA contain any similar protections for post-secondary students. HACC maintains that an earlier version of the MMA contained protections for students, but that the final enacted version did not contain any such protections. HACC further contends that implied repeals of prior laws are disfavored and that, because the MMA is not irreconcilable with the definitions of illegal drug use under PHRA and PFEOA, we should not imply a repeal of the latter statutes.

Finally, HACC argues that our courts have held that PHRA and the Americans with Disabilities Act (ADA)[7] should be interpreted co-extensively. HACC observes that PHRA's disability exclusions for illegal drug users mirror those of the ADA and that adopting the PHRC's interpretation of the exclusion would place the two

---

[6] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 to 780-144.

[7] 42 U.S.C. §§12101-12213.

statutes in conflict. However, according to HACC, adopting its preferred interpretation of the PHRC would be consistent with the statutory language of the ADA.

In contrast, the PHRC contends that PHRA and PFEOA only exclude from their disability definitions current, *illegal* users of controlled substances, which it asserts does not encompass certified users of medical marijuana. The PHRC notes that section 303(a) of the MMA sets forth the general rule that "[n]otwithstanding any provision of law to the contrary, use or possession of medical marijuana as set forth in this act is lawful within this Commonwealth." 35 P.S. §10231.303(a). Therefore, the PHRC asserts that "so long as the use of marijuana is consistent with the parameters of the MMA, it is not illegal in Pennsylvania" and that "in order not to require an accommodation of the use of medical marijuana, the use of marijuana would have to be illegal." (PHRC's Br. at 10.)

The PHRC further maintains that both section 12(a) of PHRA, 43 P.S. §962(a), and case law interpreting PHRA mandate that PHRA be construed liberally to accomplish its purpose of safeguarding individuals' right to be free from illegal discrimination. The PHRC contends that under a liberal construction of PHRA, an individual who uses medical marijuana must be accommodated because medical marijuana is legal in Pennsylvania. Additionally, the PHRC asserts that, while PHRA and the ADA have similarities, PHRA is not limited in scope by the ADA and, in many areas, actually provides greater protections than its federal counterpart. Finally, the PHRC asserts that we should afford deference to its interpretation of PHRA because it is the administrative agency tasked with enforcing PHRA.

## B. Relevant Statutory Law

As a preliminary matter, we note that among the number of provisions in the MMA, most apply to the licensing and regulation of growers, manufacturers, researchers, and dispensaries. Minimal attention is given to employees, and even less

6

is given to students. In fact, section 2104 of the MMA, while not providing any guidance as to how, where or whether pre-school, primary, or secondary students were permitted to use medical marijuana on school premises, did require the Department of Education to develop regulations pursuant to that section. 35 P.S. §10231.2104. However, we could find no regulations to date.

Moreover, the MMA provides that it is "the **intention** of the General Assembly that any **Commonwealth-based program** to provide access to medical marijuana serve as *a temporary measure*, *pending Federal approval* **of and access to medical marijuana through traditional medical and pharmaceutical avenues**." Section 102(4) of the MMA, 35 P.S. §10231.102(4) (emphasis added).

We now look at the applicable statutes in this case. Under section 5(i)(1) of PHRA, it is an unlawful discriminatory practice for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any public accommodation to "[r]efuse, withhold from, or deny to any person because of his . . . handicap or disability . . . any of the accommodations, advantages, facilities or privileges of such public accommodation." 43 P.S. §955(i)(1). Pursuant to section 4(a)(3) of PFEOA, it is an "unfair educational practice for an educational institution . . . [t]o expel, suspend, punish, deny facilities or otherwise discriminate against any student because of . . . handicap or disability." 24 P.S. §5004(a)(3). The definition of "public accommodation" under PHRA includes, *inter alia*, "primary and secondary schools, high schools, academies, colleges and universities, extension courses and all educational institutions under the supervision of this Commonwealth." Section 4(*l*) of PHRA, 43 P.S. §954(*l*). Under the PHRC's regulations,

> [i]f a handicapped or disabled person, with reasonable
> accommodation, meets the essential eligibility requirements
> for and is similarly situated with able-bodied persons in
> terms of need and desire to use, enjoy or benefit from a public
> accommodation, then reasonable accommodations shall be

7

made to assure the person opportunity substantially equivalent to that of able-bodied persons to use, enjoy and benefit from the public accommodation in an integrated setting.

16 Pa. Code §44.21.

The PHRA defines "'**handicap or disability**,' with respect to a person," as follows:

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities;

(2) a record of having such an impairment; or

(3) being regarded as having such an impairment, **but such term does not include current, illegal use of or addiction to a controlled substance**, **as defined in section 102 of the** [**Federal CSA**] (Public Law 91-513, 21 U.S.C. §802).

Section 4(p.1) of PHRA, 43 P.S. §954(p.1) (second emphasis added). The definition of "handicap or disability" in PFEOA is nearly identical to that in PHRA, providing the following:

**"Handicap or disability,"** with respect to a person, means—

(i) a physical or mental impairment which substantially limits one or more of the person's major life activities;

(ii) a record of having such an impairment; or

(iii) being regarded as having such an impairment, but **does not include current, illegal use of or addiction to a controlled substance**, **as defined in section 102 of the** [**Federal CSA**] (Public Law 91-513, [21 U.S.C. §802]).

Section 3(7) of PFEOA, 24 P.S. §5003(7) (second emphasis added).

The Federal CSA defines a "controlled substance" as a "drug or other substance . . . included in schedule I, II, III, IV, or V of part B" of the Federal CSA.

8

Section 102(6) of the Federal CSA, 21 U.S.C. §802(6).  By the statute's own terms, **marijuana is listed as a Schedule I controlled substance**, section 202(c) of the Federal CSA, 21 U.S.C. §812(c), and the Federal CSA states that a Schedule I controlled substance is delineated as such when

> **(A)** The drug or other substance has a high potential for abuse;
> **(B) The drug or other substance has no currently accepted medical use in treatment in the United States; [and]**
> **(C)** There is a lack of accepted safety for use of the drug or other substance under medical supervision.

Section 202(b)(1) of the Federal CSA, 21 U.S.C. §812(b)(1) (emphasis added).

The Federal CSA is expressly referenced in PHRA and PFEOA, and both statutes incorporate its provisions and prohibitions.  The Federal CSA expressly includes marijuana on the list of drugs which are described as having no accepted medical use.  In other words, Schedule I drugs are scheduled as such because Congress has determined that the drug has (1) a high potential for abuse, (2) **no currently accepted medical use**, and (3) a lack of accepted safety for the use of the drug under medical supervision.  *See Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citing 21 U.S.C. §812(b)(1))  ("Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment.")).

Significantly, Congress also has delineated those controlled substances which it does recognize as having a currently accepted medical use in the United States.  These are listed in Schedules II-V.  Marijuana is **not** listed in Schedules II-V.  In other words, Congress has determined that not only is marijuana listed as a prohibited Schedule I drug, **it also chose not to include it on the list of those substances that it recognizes as having any accepted medical use**.

9

Turning to Pennsylvania law, section 303(a) of the MMA provides generally that the use or possession of medical marijuana is lawful and states that "**[n]otwithstanding any provision of law to the contrary, use or possession of medical marijuana as set forth in [the MMA] is lawful within this Commonwealth**." 35 P.S. §10231.303(a) (emphasis added). Section 2101 of the MMA provides that the "possession and consumption of medical marijuana permitted under [the MMA] shall not be deemed to be a violation of the [Pennsylvania Drug Act]. If a provision of the [Pennsylvania Drug Act] relating to marijuana conflicts with a provision of [the MMA], this act shall take precedence." 35 P.S. §10231.2101. However, section 304(a) of the MMA also provides an **exclusion** rendering the use of medical marijuana unlawful as follows: *"[e]xcept as provided in section 303, section 704, Chapter 19 or Chapter 20 [of the MMA], the **use of medical marijuana is unlawful** and shall, in addition to any other penalty provided by law, be deemed **a violation of the [Pennsylvania Drug Act]**."* 35 P.S. §10231.304(a) (emphasis added).

As noted above, the MMA provides that employees cannot be discriminated against due to their status as certified users of medical marijuana, but **does not require** that an **employer provide** an **accommodation** therefor. Moreover, the MMA does not limit the employer's right to discipline an employee for being under the influence of medical marijuana in the workplace or for conduct falling below standards of normal care while under the influence of medical marijuana. Section 2103(b) of the MMA, provides, in full:

(b) **Employment.**--

(1) **No** employer may discharge, threaten, refuse to hire or otherwise **discriminate or retaliate against an employee** regarding an employee's compensation, terms, conditions, location or privileges **solely on the basis of** such employee's **status** as an individual who is certified to use medical marijuana.

10

(2) **Nothing in this act shall require an employer to make any accommodation of the use of medical marijuana** on the property or premises of any place of employment. This act shall in **no way limit an employer's ability to discipline an employee for being under the influence of medical marijuana in the workplace or** for working while under the influence of medical marijuana when the employee's **conduct falls below the standard of care normally accepted** for that position.

(3) Nothing in this act shall require an employer to commit any act that would put the employer or any person acting on its behalf in violation of Federal law.

35 P.S. §10231.2103(b) (emphasis added). Thus, while an employer cannot discriminate on the basis of an employee's status as a certified medical marijuana user, 35 P.S. §10231.2103(b)(1), an employer is **not required "to make any accommodation for the use of medical marijuana on [its] property or [the] premises of any place of employment,"** 35 P.S. §10231.2103(b)(2), **or** commit any act that would put itself, or any one acting on its behalf, **in violation of federal law**. 35 P.S. §10231.2103(b)(3) (emphasis added).

While there is a limited general provision in the MMA prohibiting discrimination against an employee due to his or her status as a certified user, there is no similar mention in the MMA regarding post-secondary students. The MMA only references the use of medical marijuana by pre-school, primary, and secondary students under section 2104 of the MMA to note that the Department of Education is to promulgate regulations therefor. Section 2104 of the MMA provides, in full, as follows:

The Department of Education shall promulgate regulations **within 18 months** of the effective date of this section regarding the following:

11

(1) Possession and use of medical marijuana by a student on the grounds of a **preschool, primary school and a secondary school**.

(2) Possession and use of medical marijuana by an employee of a **preschool, primary school and a secondary school** on the grounds of such school.

35 P.S. §10231.2104 (emphasis added). As can be seen by the above, section 2104 of the MMA only **references pre-school, primary, and secondary students**, **but it does not contain a statement as to whether or not the use of medical marijuana is permitted by these students**. Instead, the MMA required the Department of Education to promulgate regulations with respect to these students. As noted, our research did not uncover any regulations which cite to 35 P.S. §10231.2104 or explicitly address the treatment of medical marijuana on school premises. Moreover, there is absolutely no reference to post-secondary students in the MMA whatsoever. Swope is a post-secondary student. While the legislature could have included language relating to post-secondary students in the MMA, it chose not to do so.

## C. Analysis

We now assess whether HACC was required to provide a reasonable accommodation for Swope's medical marijuana use. To determine whether the language in PHRA and PFEOA is overridden by the MMA, so as to require an exemption, we apply laws of statutory construction.

> The purpose of statutory interpretation is to ascertain the General Assembly's intent and give it effect. 1 Pa.C.S. §1921(a). In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the

12

letter of it is not to be disregarded under the pretext of pursuing its spirit.").

*Mohamed v. Department of Transportation, Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa. 2012).

### i.     The Use of Medical Marijuana under the MMA

The PHRC's argument that the legalization of medical marijuana in Pennsylvania via the MMA requires an accommodation for the use of medical marijuana under section 5(i)(1) of PHRA and section 4(a)(3) of PFEOA is unpersuasive for two reasons.[8]  First, even as to employers/employees, which is **not** the case at hand,

---

[8] Initially, we address HACC's central contention that PHRA and PFEOA categorically preclude an *individual* who uses a controlled substance from having a "handicap or disability." (HACC's Br. at 9 ("[B]oth statutes explicitly exempt from their definitions of the term 'disability' *any individual* who is engaged in the 'current, illegal use of . . . a controlled substance . . . .'") (emphasis added)).  However, the question as phrased by this Court in our September 11, 2019 order was as follows:

> Whether the anti-discrimination provisions under Section 5(i)(1) of the [PHRA], *as amended*, 43 P.S. §955(i)(1) (prohibiting places of public accommodation from unlawfully discriminating against an individual because of a "disability"), and Section 4(a)(3) of the [PFEOA], *as amended*, 24 P.S. §5004(a)(3) (prohibiting institutions of higher learning from discriminating against "any student because of . . . [a] disability"), **require accommodation of [Swope's] lawful use of medical marijuana under [the MMA]**, in light of federal law prescribing that the use of marijuana is illegal.

(09/11/19 Order) (emphasis added).  HACC's statement of the issue conflates the question before us. The question is not whether Swope has a disability, it is clear that she does, Post-Traumatic Stress Disorder and Irritable Bowel Syndrome. The question is whether HACC must accommodate the disability by allowing the use of medical marijuana. The operative language defines the term "handicap or disability," and specifies that the defined term "does not include current, illegal use of or addiction to a controlled substance," as defined by the Federal CSA.  Section 4(p.1) of PHRA, 43 P.S. §954(p.1); Section 3(7) of the PFEOA, 24 P.S. §5003(7).  Through this caveat, the General Assembly specified that the use of or addiction to a controlled substance does not constitute a handicap or disability, even if such use or addiction otherwise would fall within the definition.
**(Footnote continued on next page…)**

13

the MMA only prohibits discrimination against an employee because of his or her *status* as a certified user under section 2103(b)(1), 35 P.S. §10231.2103(b)(1). While employers are prohibited from discriminating or retaliating against individuals *based on their status* as certified users of medical marijuana, section 2103(b)(2) of the MMA provides that employers are *not required to provide an accommodation* to employees on their premises, *nor are employers prohibited from disciplining* employees who are under the influence of medical marijuana on work premises:

> (2) **Nothing in this act shall require an employer to make any accommodation of the use of medical marijuana on the property or premises of any place of employment. This act shall in no way limit an employer's ability to discipline an employee for being under the influence of medical marijuana in the workplace** or for working while under the influence of medical marijuana when the employee's conduct falls below the standard of care normally accepted for that position.

35 P.S. §10231.2103(b)(2) (emphasis added). Furthermore, section 2103(b)(3) of the MMA also provides that "[n]othing in this act shall require an employer to commit any act that would put the employer or any person acting on its behalf in violation of Federal law." 35 P.S. §10231.2103(b)(3) (emphasis added).

Furthermore, section 510(4) of the MMA notes that users of medical marijuana "may be prohibited by an employer from performing any duty which could result in a **public health or safety risk** while under the influence of medical marijuana" and such a "prohibition shall not be deemed an adverse employment decision even if the prohibition results in financial harm for the [medical marijuana] patient." 35 P.S. §10231.510(4) (emphasis added). This provision would clearly apply to intensive care

---

Consequently, an individual cannot, for instance, claim that a drug addiction constitutes a disability that requires accommodation.

14

unit nurses or other nurses who are under the influence of medical marijuana while on the job or in training. Here, Swope is not even an employee, but a student at a post-secondary institution. Even if she was an employee, HACC would apparently not be required to provide an accommodation under these circumstances, as Swope is training to be a nurse, which implicates a potential public health or safety risk.

Second, the MMA neither references PHRA nor PFEOA, nor provides any language that directly addresses the usage of medical marijuana by students. The MMA only instructs the Department of Education to promulgate regulations, which it did not do. *See* 35 P.S. §10231.2104. Where, as here, the General Assembly "expressly mentions one thing in a statute, we must assume that it intended to exclude all things omitted." *Bickerton v. Insurance Commissioner*, 808 A.2d 971, 976 n.5 (Pa. Cmwlth. 2002). The legislature could have amended the language of PHRA and PFEOA to require accommodation of medical marijuana use, but chose not to do so. The legislature also could have included an anti-discrimination statement for post-secondary students within the MMA along the lines that it provided for employees, but it chose not to do so. "[U]nder the principle of *expressio unius est exclusio alterius*, the express mention of a specific matter in a statute implies the exclusion of others not mentioned." *West Penn Allegheny Health System v. Medical Care Availability and Reduction of Error Fund*, 11 A.3d 598, 605-06 (Pa. Cmwlth. 2010).

Ultimately, the above choices reflect policy judgments that belong to the legislature, not the courts. When the language of a statute is clear, we apply the words of the statute as written. Failing to do so would result in this Court wrongfully obtruding upon the province of the General Assembly to draft statutes according to whatever policies it deems important. Again, the MMA provides no protections for

15

post-secondary **students**.[9]  Moreover, the General Assembly did not amend or otherwise alter PHRA and PFEOA provisions that exclude users of medical marijuana from their definitions of disability.[10]  Hence, we are unable to do so.

_____

[9] In fact, an earlier version of the MMA prohibited schools from refusing to enroll or otherwise penalize a medical marijuana patient solely for having a medical marijuana access card or using medical marijuana in accordance with the MMA.  *See* S.B. 3, 199 Gen. Assemb., Reg. Sess. 2015-2016 (Pa. 2015),  available at https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txt Type=PDF&sessYr=2015&sessInd=0&billBody=S&billTyp=B&billNbr=0003&pn=0840       (last visited October 28, 2020).  However, these student protections were not included in the version of the MMA that was enacted into law.

[10] HACC also argues that PHRA and the ADA should be interpreted in a co-extensive manner and that adopting the PHRC's interpretation of the disability exclusion for illegal drug users would place the two statutes in conflict.  Generally, PHRA and the ADA are interpreted in a co-extensive manner because both laws deal with similar subject matter and are grounded on similar legislative goals.  *Imler v. Hollidaysburg American Legion Ambulance Service*, 731 A.2d 169, 173-74 (Pa. Super. 1999); *see also Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996).  However, in interpreting PHRA, Pennsylvania courts are not bound by federal court decisions interpreting the ADA.  *Canteen Corp. v. Pennsylvania Human Relations Commission*, 814 A.2d 805, 811-12 n.5 (Pa. Cmwlth. 2003); *Imler*, 731 A.2d at 174.  Yet, in a case of first impression, it may be appropriate to look to federal decisions involving similar federal statutes for guidance.  *Canteen Corp.*, 814 A.2d at 812 n.5.

Like PHRA, section 511 of the ADA, 42 U.S.C. §12210, excludes illegal drug users from the term "individual with a disability" when "the covered entity acts on the basis of such use," and defines "illegal use of drugs" as the "use of drugs which is unlawful under the [CSA.]"  *Id.*  PHRA uses different language, but accomplishes similar ends.  *See* 43 P.S. §954(p.1) (excluding "current, illegal use of or addiction to a controlled substance" from the definition of "handicap or disability").  As pointed out by HACC, in *James v. City of Costa Mesa*, 700 F.3d 394 (9th Cir. 2012), the United States Court of Appeals for the Ninth Circuit held that medical marijuana use, which was permitted under the law of Washington State but prohibited by federal law, qualified as an illegal use of drugs for purposes of the ADA and, therefore, that the plaintiff's use of medical marijuana brought him within the ADA's illegal drug exclusion.  *Id.* at 405.  However, HACC has not cited to any United States Court of Appeals for the Third Circuit decisions, or any other federal court decisions, which interpreted the Pennsylvania MMA as it relates to the ADA.  Moreover, unlike the federal ADA, PHRA is a Pennsylvania law, which the General Assembly has the authority to amend.  Thus, although we ultimately find in HACC's favor and conclude that the MMA did not amend PHRA, because we are not bound by federal decisions interpreting the ADA, there are no federal decisions

**(Footnote continued on next page…)**

16

### ii. The MMA Does Not Amend PHRA or PFEOA

Notwithstanding the absence of any statutory provision requiring accommodation of students' use of medical marijuana, the PHRC contends that the MMA modified both PHRA and PFEOA to require that educational institutions accommodate medical marijuana use. In particular, the PHRC argues that medical marijuana use is no longer considered illegal drug use under either PHRA or PFEOA because section 303(a) of the MMA expressly provides that "[n]otwithstanding any provision of law to the contrary, use or possession of medical marijuana as set forth in this act is lawful," 35 P.S. §10231.303(a). However, this argument is not persuasive as it is contrary to basic statutory construction precepts.

First, neither section 303 of the MMA, nor any other provision in that law, mention PHRA or PFEOA. Except when a statute purports to be a revision of all statutes upon a particular subject or to establish a uniform and mandatory system covering a class of subjects, "a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable." Section 1971 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1971. Thus, "there is a very strong presumption that a statute does not impliedly repeal another statute." *Borough of Emmaus v. Pennsylvania Labor Relations Board*, 156 A.3d 384, 398 n.9 (Pa. Cmwlth. 2017); *see also In re Delinquent Tax Sale*, 477 A.2d 603, 605 (Pa. Cmwlth. 1984) (noting that "implied repeals are not favored by the law"); *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 284 A.2d 808, 811 (Pa. Cmwlth. 1971) (concluding "there is a presumption against implied repeal"). "The question of whether a statute has been impliedly repealed by a later statute is exclusively a question of

---

interpreting the MMA, and the General Assembly possesses the authority to amend or repeal the disability exclusions for marijuana users present in PHRA, we place little to no weight on either the language of the ADA, or federal cases interpreting it, in our overall analysis of this matter.

legislative intent." *HSP Gaming, L.P. v. City of Philadelphia*, 954 A.2d 1156, 1175 (Pa. 2008). Because repeals by implication are not favored, they "will not be implied unless there be an irreconcilable conflict between statutes embracing the same subject matter." *Id.* Moreover, since implied repeals are not favored, "legislative intent to repeal a statute by enacting another must be clearly shown." *Id.*

Here, because the MMA is not irreconcilable with any provision of PHRA or PFEOA, we decline to conclude that the MMA impliedly repealed any portion of those statutes. Although the MMA provides that medical marijuana use is lawful in Pennsylvania, given the silence in the MMA with respect to PHRA and PFEOA and the absence of any specific protection for students, there is no reason to infer that the General Assembly intended to require educational institutions to accommodate a student's use of medical marijuana. Moreover, the MMA is not irreconcilable with either PHRA or PFEOA due to the different objectives of the statutes. The purpose of PHRA and PFEOA is to remedy various types of discrimination, as opposed to the MMA, which legalized medical marijuana. The absence of a statutory provision requiring post-secondary educational institutions to accommodate medical marijuana usage, however, does not negate or frustrate the MMA's overall intent of making medical marijuana lawful in Pennsylvania.

In *Ross v. RagingWire Telecommunications, Inc.*, 174 P.3d 200 (Cal. 2008), the California Supreme Court reached a similar result. Prior to legalizing recreational marijuana, California voters approved a 1996 initiative that gave users of medical marijuana a defense to certain state criminal charges involving the drug. *Id.* at 202. After the plaintiff was discharged by his employer for medical marijuana use, he brought a lawsuit against his employer under California's anti-disability discrimination law. *Id.* Like PHRA, California's anti-discrimination law did not require employers to accommodate the use of illegal drugs. *Id.* at 204-05. The California Supreme Court determined that although California voters had decided to

18

legalize medical marijuana for certain uses, there was nothing in California's medical marijuana law to suggest that California voters intended the law to require employers to accommodate employees' medical marijuana use under California's anti-discrimination law. *Id.* at 205-07. The absence of any statutory provision requiring accommodation of medical marijuana usage by *students* renders the circumstance analogous to that at issue in *Ross*. That is, there is nothing in the MMA suggesting that the General Assembly intended to require educational institutions to accommodate students' usage of medical marijuana under PHRA or PFEOA.

Our conclusion is bolstered by the MMA's reference to other statutes. The MMA references the Pennsylvania Drug Act in section 304(a), and section 2101, 35 P.S. §§10231.304(a), 10231.2101. The fact that the MMA explicitly amended the Pennsylvania Drug Act, but did not specifically amend either PHRA or PFEOA, can only be interpreted as meaning the General Assembly did not intend to amend either PHRA or PFEOA. Moreover, the MMA explains that it is "the **intention** of the General Assembly that any **Commonwealth-based program** to provide access to medical marijuana serve as **a temporary measure**, **pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues**." 35 P.S. §10231.102(4) (emphasis added). Because the General Assembly intended that the program be temporary pending Federal approval, it is clear that the legislature recognized the Federal CSA, and any other federal prohibition against the use of medical marijuana. Importantly, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.*, 213 A.2d 277, 282 (Pa. 1965). The General Assembly could have explicitly amended PHRA and PFEOA, but it did not, and we are unable to presume that it intended to amend those laws by implication.

19

### iii. The PHRC's Interpretation of PHRA is Not Entitled to Deference.

The PHRC also argues that because PHRA mandates that the act should be construed liberally, we should adopt the PHRC's interpretation with respect to the accommodation of medical marijuana use. We note that section 12 of PHRA states that the provisions of PHRA "shall be construed liberally for the accomplishment of purposes thereof, and any law inconsistent with any provisions hereof shall not apply." 43 P.S. §962; *see Chestnut Hill College v. Pennsylvania Human Relations Commission*, 158 A.3d 251, 258 (Pa. Cmwlth. 2017) (observing that PHRA should be construed liberally to accomplish its purposes). However, as our Supreme Court has held, the liberal construction mandate of PHRA only requires that we "adopt a construction which, *without doing violence to the language of the statute*, best promotes the goal of equal employment." *Winn v. Trans World Airlines, Inc.*, 484 A.2d 392, 398 (Pa. 1984) (emphasis added). Moreover, it is not PHRA or any particular interpretation thereof that commands our conclusion here. Rather, it is the MMA, or, more specifically, the absence of any provision in the MMA providing the sort of mandate that the PHRC seeks, that drives our holding. As stated above, our conclusion is based firmly on the ground that the MMA does not require the accommodation of medical marijuana on an employer's premises, nor does the same provision of the MMA apply to or even mention post-secondary students. Further, the legislature included a specific provision that addressed discrimination due to the use of medical marijuana and stated that an employer does not have to accommodate its use or possession on the premises or where public safety would be risked. *See* 35 P.S. §§10231.2103(b), 10231.510(4). As a result, HACC cannot be required under the MMA to accommodate the use of a drug that is proscribed by PHRA and PFEOA, via adoption of the Federal CSA, to treat a disability. Therefore, although PHRA should be construed liberally, because the PHRC's proposed, liberal construction of PHRA would require us to effectively rewrite

20

the MMA to include protections and provisions that the General Assembly did not see fit to include, we are unable to adopt the PHRC's preferred interpretation of the statutory scheme.

Additionally, the PHRC argues that we should defer to its interpretation of PHRA and PFEOA because it is the administrative agency tasked with enforcing those statutes. In general, "[w]hen considering an agency's interpretation of a statute that it is charged with implementing and enforcing, we afford substantial deference to that interpretation." *Office of Administration v. Pennsylvania Labor Relations Board*, 916 A.2d 541, 550 n.11 (Pa. 2007); *see Winslow-Quattlebaum v. Maryland Insurance Group*, 752 A.2d 878, 881 (Pa. 2000) ("It is well settled that when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation.").

However, "[w]hen an administrative agency's interpretation . . . is inconsistent with the statute itself, or when the statute's meaning is unambiguous, such an administrative interpretation carries little weight." *Office of Administration*, 916 A.2d at 550 n.11. Consequently, "[w]e must give deference to the interpretation of the legislative intent of a statute made by an administrative agency only where the language of that statute is not explicit or ambiguous. A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines Inc. v. Department of Environmental Protection*, 676 A.2d 711, 715 (Pa. Cmwlth. 1996) (citation omitted); *see also* Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921 (providing that "[w]hen the words of [a] statute *are not explicit*, the intention of the General Assembly may be ascertained by considering, among other matters[,] . . . administrative interpretations of such statute" (emphasis added)); *Velocity Express v. Pennsylvania Human Relations Commission*, 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004) (holding that courts "need not give deference to any agency when

21

its construction frustrates legislative intent" and, therefore, although "courts often defer to an agency's interpretation of the statutes it administers, where . . . the meaning of a statute is a question of law for the court" and when the court is "convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted").

First, we observe that although the PHRC's interpretation of PHRA and PFEOA may be entitled to deference where those statutes are ambiguous, because the PHRC is responsible for implementing and enforcing them, we note that PHRA and PFEOA are not ambiguous and moreover, the PHRC is not responsible for implementing or enforcing the MMA; thus, its interpretation of that statute should not be afforded any weight. Second, even if the statutes were otherwise determined to be ambiguous, to the extent that the PHRC is entitled to deference, we note that both statutes exclude disability discrimination protections for current users of illegal controlled substances with regard to their use of illegal substances. This is in accord with the legislature's decision to look to the definition of controlled substances as defined by the Federal CSA, which deems marijuana a Schedule I controlled substance without any accepted medical use. *See* Section 4(p.1) of PHRA, 43 P.S. §954(p.1); Section 3(7) of PFEOA, 24 P.S. §5003(7). Moreover, as discussed previously, based on its plain language and structure, the MMA did not amend or repeal the disability exclusions of section 4(p.1) of PHRA or section 3(7) of PFEOA. Hence, even if PHRA or PFEOA were ambiguous, we would afford the PHRC no deference because its construction of the statute frustrates legislative intent. As we have explained in detail above, the legislature, in the face of the MMA, chose not to amend PHRA or PFEOA. This abstention on behalf of the legislature evinces its intent that current users of illegal drugs not be subject to protection with regard to their illegal use of drugs. Of course, "[t]he cardinal rule of all statutory construction is to ascertain and effectuate the intent of the Legislature." *O'Rourke v. Department of Corrections,* 778 A.2d 1194, 1201 (Pa. 2001).

Finally, we address our Supreme Court's recent opinion in *Gass v. 52nd Judicial District, Lebanon County*, 232 A.3d 706 (Pa. 2020), in which a local judicial district implemented a probation policy that prohibited individuals under court supervision from using medical marijuana. *Id*. at 707. Specifically, the policy prohibited "the active use of medical marijuana, regardless of whether the defendant has a medical marijuana card, while the defendant is under supervision by the [local probation department.]" *Id*. at 708. The policy stated that "[s]ince medical marijuana use (medical or recreational) is . . . illegal under [f]ederal law, and the [local judicial district] and the [local probation department] should not knowingly allow violations of law to occur, the prohibition against such use is required." *Id*. at 708-09. In other words, in contravention of the MMA, the local judicial district incorporated the Federal CSA despite that the General Assembly had not done so.

The Court framed the question before it as "whether the [p]olicy violates the immunity provision of the MMA." *Gass*, 232 A.3d at 711. The immunity provision of the MMA provides that an individual

> **shall [not] be subject to arrest, prosecution or penalty in any manner, or denied any right or privilege**, including civil penalty or disciplinary action by a Commonwealth licensing board or commission, **solely for lawful use of medical marijuana or manufacture or sale or dispensing of medical marijuana, or for any other action taken in accordance with this act** . . . .

35 P.S. §10231.2103(a) (emphasis added). *See Gass*, 232 A.3d at 708. The Court in *Gass* ultimately concluded that a *local policy cannot usurp a state law* simply by reference to a federal law.

The Supreme Court concluded that while the *local policy* pointed to the Federal CSA, "the core principle of federalism recognizing dual sovereignty between the tiers of government . . . [and that in] enacting the MMA, the Pennsylvania Legislature proceeded pursuant to its independent power to define state criminal law

23

and promote the health and welfare of the citizenry." *Gass*, 232 A.3d at 714. Furthermore, the Court explained that

> [w]hile the circumstances are certainly uneasy – **since possession and use of medical marijuana remains a federal crime – we find that the [*local judicial district*] cannot require state-level adherence to the federal prohibition, where the General Assembly has specifically undertaken to legalize the use of medical marijuana for enumerated therapeutic purposes.**

*Id*. (emphasis added). "Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012).

The instant matter is distinguishable because the General Assembly chose not to require employers to accommodate an employee's, let alone a post-secondary student's, usage of medical marijuana under the MMA, PHRA, or PFEOA, which are state legislative enactments. This is because the General Assembly specifically incorporated the Federal CSA into PHRA and PFEOA. Specifically, "(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance, as defined in section 102 of the [Federal CSA] (Public Law 91-513, 21 U.S.C. §802)," 43 P.S. §954(p.1), and "(iii) being regarded as having such an impairment, but does not include current, illegal use of or addiction to a controlled substance, as defined in section 102 of the [Federal CSA] (Public Law 91-513, [21 U.S.C. §802])." 24 P.S. §5003(7). Contrary to the *Gass* case, here the General Assembly exercised its law making authority to include a provision in PHRA and PFEOA to require compliance with the Federal CSA. After enacting the MMA, the legislature chose **not** to remove those restrictions from PHRA or PFEOA. The General Assembly has clearly spoken and the language in PHRA and PFEOA reflect the General Assembly's intent.

24

## Conclusion

The MMA does not provide any requirements for accommodations of post-secondary students who use medical marijuana for a disability. Moreover, the General Assembly chose not to amend PHRA or PFEOA after passage of the MMA to otherwise remove the applicability of the Federal CSA, which prohibits the use of Schedule I drugs, including medical marijuana. For these reasons, HACC, an educational institution, was not required to provide Swope a reasonable accommodation for her use of medical marijuana. Thus, we must conclude that Swope's claim was legally insufficient and the PHRC erred in denying HACC's motion to dismiss. Accordingly, we reverse the PHRC's interlocutory order and remand the instant matter to the PHRC to grant HACC's motion to dismiss consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

25

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harrisburg Area Community College,   :
           Petitioner   :
  :  No.  654 C.D. 2019
        v.   :
  :
Pennsylvania Human Relations   :
Commission,   :
           Respondent   :

## ***ORDER***

AND NOW, this 29th day of October, 2020, the March 26, 2019 interlocutory order of the Pennsylvania Human Relations Commission (PHRC) is REVERSED, and the instant matter is REMANDED to the PHRC to GRANT Harrisburg Area Community College's motion to dismiss consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

Harrisburg Area Community College,  :
                        Petitioner  :
                                    :
          v.                    :
                                    :
Pennsylvania Human Relations   :
Commission,                     :   No. 654 C.D. 2019
                 Respondent  :   Argued:  May 11, 2020


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

CONCURRING OPINION
BY JUDGE COVEY                           FILED:  October 29, 2020


        While I agree with the Majority that we are bound by statute to reverse the Pennsylvania Human Relations Commission's interlocutory order, I write separately to urge the General Assembly to amend the Pennsylvania Human Relations Act (PHRA)[1] and the Pennsylvania Fair Educational Opportunities Act (PFEOA)[2] so the benefits the General Assembly created in the Pennsylvania Medical Marijuana Act (MMA)[3] for the citizens of this Commonwealth are not illusory or applicable in only limited circumstances; thereby, creating an egregious result as is demonstrated in the instant case.

        When the General Assembly enacted the MMA, it declared in Section 102 thereof:

> (1) Scientific evidence suggests that **medical marijuana** is one potential therapy that **may mitigate suffering in some patients and also enhance quality of life**.

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

[2] Act of July 17, 1961, P.L. 776, *as amended*, 24 P.S. §§ 5001-5010.

[3] Act of April 17, 2016, P.L. 84, 35 P.S. §§ 10231.101-10231.2110.

(2) The Commonwealth is committed to patient safety. Carefully regulating the program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.

(3) **It is the intent of the General Assembly to**:

(i) **Provide a program of access to medical marijuana** which balances the need of patients to have access to the latest treatments with the need to promote patient safety.

(ii) Provide a safe and effective method of delivery of medical marijuana to patients.

(iii) Promote high quality research into the effectiveness and utility of medical marijuana.

35 P.S. § 10231.102 (emphasis added).

As a co-equal branch of government, this Court has no authority to fulfill the General Assembly's intent as set forth in the MMA of providing access to medical marijuana to those individuals whose physicians have prescribed it, while simultaneously enforcing the protections and rights the General Assembly created in the PHRA and the PFEOA. Due to the General Assembly's failure to revise the PHRA and the PFEOA to reflect the MMA's intent, an individual otherwise granted access to medical marijuana under the MMA loses all protections and rights of the PHRA and the PFEOA. In order for Pennsylvania citizens to have access to medical marijuana while receiving the protections and rights of the PHRA and the PFEOA, the General Assembly must amend the PHRA and the PFEOA to remove the "as defined in Section 102 of the Controlled Substances Act (Public Law 91-513, 21 U.S.C. § 802)" restriction from its description of illegal use of a controlled substance. *See* Section 4(p.1) of the PHRA, 43 P.S. § 954(p.1); Section 3(7) of the PFEOA, 24 P.S. § 5003(7).

The conflict among these statutes has created an absurd result in requiring Pennsylvania citizens to choose the benefits of medical marijuana or the

protections of the PHRA and the PFEOA. This quagmire for individuals whose physicians have prescribed medical marijuana for their use as authorized by the MMA, but who are then precluded from using the same because of the risk to their employment and education since such use is still illegal under the PHRA and the PFEOA, and other Pennsylvania law, is an untenable position. "Nevertheless, '[w]here the language of the governing statute is clear (or clear enough), . . . the solution is legislative – and not judicial – adjustment.'" *Gass v. 52nd Judicial District, Lebanon County*, 232 A.3d 706, 715 (Pa. 2020) (quoting *Williams v. City of Phila.*, 188 A.3d 421, 436 (Pa. 2018)).

For these reasons, the General Assembly is, therefore, strongly encouraged to revise all affected areas of the law to accurately reflect its declaration of intent set forth in the MMA to permit Pennsylvania citizens access to medical marijuana to mitigate suffering and enhance their quality of life.


_____
ANNE E. COVEY, Judge